02-09-221-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00221-CR

 

 


 
 
 Thoys Dewayne Sanders
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM County
Criminal Court No. 4 OF Tarrant COUNTY

------------

OPINION

------------

I.  Introduction

          A
jury convicted appellant Thoys Dewayne Sanders of assault.  The trial court
assessed punishment at 270 days’ confinement and probated that sentence for two
years, placing Sanders on community supervision.  The court also required
Sanders to pay $21,541 in restitution.  In three issues, Sanders contends that
the evidence is insufficient to prove he assaulted the alleged victim, that the
trial court abused its discretion by assessing the restitution amount, and that
he received ineffective assistance of counsel at trial.  We will affirm.

II.  Background

Leah
Williams, who lived with her mother and Sanders, her stepfather, entertained
friends on the night of Saturday, April 21, 2007.  Sara Grauerholz, Amanda
Sessions, Jeremiah Langen, and Justin Henninge, the alleged victim in this
case, were Williams’s guests.  Williams and her friends smoked marijuana and
drank alcohol that evening.  They eventually fell asleep in different rooms of
the residence’s garage apartment.

          Early
the next morning, Williams’s mother woke her up and told her that Sanders was
angry and that she and her friends needed to leave.  Williams’s mother was also
upset because someone’s car was blocking her car in the driveway.  The layout
of the garage apartment requires one to walk down the stairs and exit through
the garage, where Sanders kept his cabinet-making workshop.  As Williams and
her friends began to leave, Williams and Grauerholz walked outside as Sanders
quickly passed them and entered the garage.  At that moment, Sanders
encountered Henninge.  That encounter led to assault charges against Sanders.

A.      Justin
Henninge

According
to Henninge, he was woken when Williams’s mother confronted Williams that
morning.  He said that Williams’s mother said, “Wake up.  Wake up.  [Sanders]
is angry.  [Sanders] is mad.  You have to leave.”  Henninge testified that he,
Grauerholz, and Williams walked down the stairs of the garage apartment,
attempting to exit the garage.  By Henninge’s account, as soon as Grauerholz
and Williams left the garage, Sanders came into the garage and, using his arm,
“pinned [Henninge] against the wall.”  Henninge said, “from then I woke up to
[Grauerholz] yelling.”  Henninge said that because he was knocked unconscious by
Sanders, he did not really remember much of anything from the encounter other than
Grauerholz yelling “You hit my boyfriend.”  Henninge and the prosecutor
re-enacted Henninge’s account of the encounter with Sanders for the jury. 
Henninge said that despite having smoked marijuana the night before, he was
sober when these events happened.  At some point, police and EMT arrived on the
scene and Henninge was taken to the hospital.  Henninge did not remember
talking with a police officer and did not remember riding to the hospital, but
he did remember being placed on a stretcher.

The
next thing Henninge vividly remembered was getting an MRI at the hospital. 
Henninge said Sanders’s actions left a huge bruise on one side of his face,
another on the back of his head, and another on the opposite side of his face. 
The State introduced pictures of these injuries, and Henninge testified that
they were accurate depictions of the injuries he had sustained from his
encounter with Sanders.  Henninge also averred that Sanders had caused him to
have a black eye, multiple facial rashes and abrasions, and internal bleeding
of the brain.  Henninge testified that the hospital performed multiple scans,
including MRIs and X-rays.

B.      Sara
Grauerholz

Much
like Henninge’s account, Grauerholz testified that she, Henninge, and a few
others stayed with Williams that night.  As the morning approached, Williams’s
mother woke them all, mildly irritated that Grauerholz’s vehicle was blocking
hers.  According to Grauerholz, Williams’s mother informed them that Sanders
was upset.  Grauerholz recounted the noise she heard when she left the garage
and was outside, “[W]e heard a noise against a garage door . . . .
 A slam or something hitting a garage door.”  Grauerholz said she immediately
turned toward the garage and saw Henninge lying on the floor not moving.  She
said that Sanders was standing over Henninge.  She and Williams attempted to
carry Henninge to her car, but Williams’s mother came out, told them to stay, and
informed them that 9-1-1 had been called.  Grauerholz also testified that she
believed Henninge was sober that morning.  She said that she asked Sanders why
he had hit her boyfriend and that Sanders simply went upstairs without
responding.  Sanders also did not assist Henninge despite Henninge’s injuries.

C.      Jason
Bowman

Jason
Bowman, an EMT basic paramedic, responded to the request for medical assistance
that morning.  Bowman said that when he arrived and encountered Henninge,
Henninge appeared confused.  Bowman averred, given his experience as an EMT
paramedic, that Henninge did not appear high on drugs or alcohol.  He also said
that Henninge was injured.  Based on his training and experience, Bowman
believed that Henninge’s injuries appeared to be the result of an assault. 
Bowman testified that he initially diagnosed Henninge with a concussion.  He
said that Henninge also had facial tenderness, swelling, lacerations to the
face, and a nosebleed.  Bowman said that Henninge’s injures were severe and the
result of a “severe blunt force.”  He also testified that Henninge had no
injuries to the back of his head and that Henninge’s injuries were consistent
with a frontal blow.

D.      Leah
Williams

Leah
Williams testified.  Williams’s account of the morning in question tracked the
testimony of Henninge and Grauerholz.  That is, Williams also said that she, Grauerholz,
and Henninge were leaving because her mother woke them up and asked them to
leave.  She testified that her mother was angry.  Williams also said that she
heard what she believed to be Henninge hitting the garage door.  She said that
the garage door “rattled quite a bit” from whatever impacted it.

E.      Medical
Records and Verdict

The
State admitted into evidence a set of medical records, with an accompanying
affidavit, regarding Henninge’s admittance into the hospital on the morning of April
22, 2007.  The records contain detailed medical information pertaining to
Henninge’s obligations to pay for medical treatment of injuries he sustained.

The
jury found Sanders guilty.  Sanders elected to have the trial court assess
punishment.  At the punishment hearing, Henninge’s mother testified that
despite Henninge having some insurance coverage, his insurance carrier would
not pay most of his medical bills and that her family has not been able to pay
for Henninge’s medical bills.  She also said that the bills were delinquent at
the time of trial.  The State again introduced medical billing documents
showing that Henninge’s unpaid medical costs related to injuries he sustained
on April 22, 2007, totaled $21,541.  The trial court assessed punishment at 270
days’ in jail but probated Sanders’s sentence for two years.  The court also
ordered Sanders to pay restitution in the amount of $21,541.  This appeal
followed.

III.  Discussion

A.      Sufficiency
of the Evidence

In
his first point, Sanders contends that the trial court abused its discretion by
denying his motion for instructed verdict.  Sanders’s first point contains two
distinct subparts.  First, it seems that Sanders argues that there exists a
variance between the charging instrument and the proof presented at trial to
show that he assaulted Henninge.  Second, Sanders challenges the evidentiary
sufficiency to support his conviction.

1.       No Material Variance

          In
part of his first point, Sanders argues that the evidence does not support that
Henninge’s injuries were a result of him having struck a wall; rather, the
evidence “indicates that the injuries sustained by [Henninge] were the result
of Henninge’s fall to the floor.”  Sanders appears to argue that because the
charging instrument—in this case by information—alleged that Sanders
“intentionally or knowingly cause[d] bodily injury to [Henninge], by striking
him . . . thereby causing him to strike or slam into a wall” and
because the evidence at trial showed that Henninge’s injuries were caused by
him hitting the floor, the evidence is insufficient to support Sanders’s
conviction.  Thus, according to Sanders, the trial court erred by not granting
his instructed verdict.

A
“variance” occurs when there is a discrepancy between the allegations of the
charging instrument and the proof at trial.  Gollihar v. State, 46
S.W.3d 243, 246 (Tex. Crim. App. 2001).  In other words, in a variance situation,
the State has proved the defendant guilty of a crime, but has proved its
commission in a manner that varies from the allegations in the charging
instrument.  Id.  Only a material variance requires reversal because
only a material variance prejudices a defendant’s substantial rights.  Fuller
v. State, 73 S.W.3d 250, 263 (Tex. Crim. App. 2002).  We decide if the
variance is material by determining “whether the [charging instrument], as
written, informed the defendant of the charge against him sufficiently to allow
him to prepare an adequate defense at trial, and whether prosecution under the
deficiently drafted [charging instrument] would subject the defendant to the
risk of being prosecuted later for the same crime.”  Gollihar, 46 S.W.3d
at 257.

Sanders does not argue that
the information was inadequate to inform him of the charge against him
sufficiently to allow him to prepare an adequate defense, nor does Sanders
argue that prosecution under the information would subject him to the risk of
being prosecuted later for the same crime.  In fact, Sanders’s trial counsel
repeatedly attempted to persuade the jury that Sanders’s and Henninge’s
encounter was purely accidental, rather than an assault.  Trial counsel also
repeatedly demonstrated through extensive questioning of witnesses that Sanders
was fully aware of whom he was accused of injuring, and there is no evidence
that Sanders was surprised by any proof offered at trial.  See Fuller,
73 S.W.3d at 253–54 (“There is no indication in the record that appellant did
not know whom he was accused of injuring or that he was surprised by the proof
at trial.”).  We hold that Sanders has failed to show a fatal variance between
the indictment and the proof at trial, and we overrule this portion of his
first point.  Thus, we will disregard the alleged variance in determining
whether the evidence is sufficient to prove that Sanders assaulted Henninge.  See
Hilburn v. State, 312 S.W.3d 169, 175 (Tex. App.—Fort Worth 2010, no pet.)
(disregarding alleged variance and conducting evidentiary sufficiency review
when appellant failed to explain on appeal how alleged variance prevented him
from preparing a defense or how he could be prosecuted again under same facts).

2.       The Evidence is Sufficient to Support Sanders’s
Conviction

 

In the remainder of his first point, Sanders
challenges the sufficiency of the evidence to support his conviction for
assaulting Henninge.  Sanders claims both that we are to conduct a legal sufficiency
review and that we are to remand this case for a new trial; thus, Sanders
implicates issues of both legal and factual sufficiency reviews.  But the crux
of Sanders’s point is that “[t]here is no evidence that the injuries sustained
by Henninge were the result of [Sanders] causing him to strike a wall” and that
there exists a “reasonable hypothesis other than [Sanders’s] guilt” that
Henninge “fell to the floor accidentally.”  We conclude that the evidence
supports Sanders’s conviction.

The
court of criminal appeals has held that there is “no meaningful distinction
between the Jackson v. Virginia legal-sufficiency standard and the Clewis
factual-sufficiency standard” and that the Jackson standard “is the only
standard that a reviewing court should apply in determining whether the
evidence is sufficient to support each element of a criminal offense that the
State is required to prove beyond a reasonable doubt.”  Brooks v. State,
323 S.W.3d 893, 895, 902 (Tex. Crim. App. 2010).  Accordingly, we review
Sanders’s claims of evidentiary sufficiency under “a rigorous and proper
application” of the Jackson standard of review.  Id. at 906.

Under the Jackson
standard, “the relevant question is whether, after viewing the evidence in the
light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.”  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2789,
2789 (1979); see Brooks, 323 S.W.3d at 899 (characterizing the Jackson
standard as:  “Considering all of the evidence in the light most
favorable to the verdict, was a jury rationally justified in finding guilt
beyond a reasonable doubt”).  “[T]he factfinder’s role as weigher of the
evidence is preserved through a legal conclusion that upon judicial review all
of the evidence is to be considered in the light most favorable to the
prosecution.”  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; see
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979) (“The jury, in all cases,
is the exclusive judge of the facts proved and of the weight to be given to the
testimony.”); Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App.
2000), cert. denied, 532 U.S. 944 (2001) (“The jury is the exclusive
judge of the credibility of witnesses and of the weight to be given testimony,
and it is also the exclusive province of the jury to reconcile conflicts in the
evidence.”).

Sufficiency
of the evidence is measured by the elements of the offense as defined by a
hypothetically correct jury charge.  Curry v. State, 30 S.W.3d 394, 404
(Tex. Crim. App. 2000); Adi v. State, 94 S.W.3d 124, 131 (Tex.
App.—Corpus Christi 2002, pet. ref’d).  Under a hypothetically correct jury
charge, the State was required to prove beyond a reasonable doubt that Sanders “intentionally,
knowingly, or recklessly cause[d] bodily injury to another.”  Tex. Penal Code
Ann. § 22.01(a)(1) (Vernon Supp. 2010).

The
State is not required to present direct evidence to establish guilt.  See
Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).  Indeed,
circumstantial evidence is as probative as direct evidence in establishing the
guilt of the actor, and circumstantial evidence alone can be sufficient to
establish guilt.  Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007);
see Guevara, 152 S.W.3d at 49.  The law does not
require that each fact “point directly and independently to the guilt of the
appellant, as long as the cumulative force of all the
incriminating circumstances is sufficient to support the conviction.”  Hooper,
214 S.W.3d at 13; see Guevara, 152 S.W.3d at 49.

Moreover,
it is not incumbent upon the State to exclude “every reasonable
hypothesis other than guilt” for the evidence to be
considered sufficient.  See Geesa v. State, 820 S.W.2d 154, 157–61 (Tex.
Crim. App. 1991), overruled on other grounds by Paulson v. State, 28
S.W.3d 570, 571 (Tex. Crim. App. 2000); see also Villarreal Lopez v. State,
267 S.W.3d 85, 97–98 (Tex. App.—Corpus Christi 2008, no pet.) (citing Harris
v. State, 133 S.W.3d 760, 763–65 (Tex. App.—Texarkana 2004, pet. ref’d)); Richardson
v. State, 973 S.W.2d 384, 387 (Tex. App.—Dallas 1998, no pet.) (“[T]he mere
existence of an alternative reasonable hypothesis does not render
the evidence . . . insufficient. . . . [E]ven when an
appellant identifies an alternative reasonable
hypothesis raised by the evidence, the standard of review
remains the same.”); Orona v. State, 836 S.W.2d 319, 322 (Tex.
App.—Austin 1992, no pet.)).

In
this case, the jury heard testimony that Sanders was angry the morning that
Henninge was injured.  Multiple witnesses testified that Williams and her
friends were woken by Williams’s mother, who declared that everyone needed to
leave and that Sanders was angry.  Grauerholz testified that as she and
Williams left the garage, Sanders quickly went into the garage; a loud noise
and rattling of the garage door could be heard; and both Williams and Grauerholz
said that as they looked to see what had occurred, Henninge was then on the
floor, unconscious.  Multiple witnesses testified that Sanders was standing
over Henninge and not assisting him.  Grauerholz’s reaction was to immediately
exclaim, “I can’t believe you hit my boyfriend.”  And Sanders did not deny
hitting Henninge.  Henninge testified that as Sanders came into the garage, he
pinned Henninge against the wall with his arm and that from there, Henninge
lost consciousness.  Bowman, the paramedic who immediately treated Henninge,
testified that Henninge had tenderness, swelling, and other signs of impact
injury, including lacerations, nosebleed, contusions, and abrasions to his head
and neck area.  Bowman also testified that Henninge acted consistent with a
person who had been hit by a strike that was a “[p]retty severe blunt force.  A
very good punch, hit, [or] kick.”

Viewing the
evidence in the light most favorable to the prosecution, a rational
trier of fact could have found beyond a reasonable doubt that Sanders
intentionally, knowingly, or recklessly caused Henninge’s bodily injuries See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235
S.W.3d at 778; see also Tex. Penal Code Ann. § 22.01.  Accordingly,
we hold that the evidence is sufficient to support Sanders’s conviction for
assault.  See Moon v. State, 44 S.W.3d 589, 593 (Tex. App.—Fort Worth 2001,
pet. ref’d) (holding that evidence was legally sufficient to prove defendant
used his hands to injure his wife, despite lack of direct testimony, because
jury could infer use of hands from circumstances surrounding wife’s injuries). 
We overrule the remainder of Sanders’s first point.

B.      Effective
Assistance of Counsel

          In
his second point, Sanders argues that the trial court abused its discretion by
denying his motion for new trial.  Sanders’s motion claimed that he received
ineffective assistance of counsel.  Filed with his motion, Sanders attached an
affidavit of an alleged witness who averred that he would testify that Sanders
accidentally ran into Henninge and that Sanders did not intentionally injure
Henninge.  Concerned that trial counsel had failed to call a potentially
exculpating witness, on October 18, 2010, this court abated Sanders’s appeal and remanded the case to the trial court to conduct a hearing on his motion for new trial.  In our abatement order, we
specifically stated that “Sanders’s trial counsel should have been afforded an
opportunity to explain his actions.”  At the hearing, however, Sanders did not
call his original trial counsel to testify and explain his trial tactics.  The
trial court again denied Sanders’s motion for new trial.  Thus, we will conduct
our analysis of Sanders’s second point using the record from the trial and from
the abatement hearing.

Our
review of counsel’s performance must be highly deferential.  Strickland v.
Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065 (1984).  The
burden of proving ineffective assistance
of counsel is on the appellant.  Stafford v. State,
813 S.W.2d 503, 506 n.1 (Tex. Crim. App. 1991); Moore v. State, 694
S.W.2d 528, 531 (Tex. Crim. App. 1985); Cannon v. State, 668 S.W.2d 401,
403 (Tex. Crim. App. 1984).  An allegation of ineffective
assistance of counsel will be
sustained only if it is firmly founded and if the record
affirmatively demonstrates counsel’s alleged ineffectiveness.  Ex parte
McWilliams, 634 S.W.2d 815, 819 (Tex. Crim. App. 1980), cert. denied,
459 U.S. 1036 (1982).  Effective assistance of counsel is gauged by the
totality of the representation from the pretrial representation of the accused
through the punishment stage of the trial.  Ex parte Walker, 777 S.W.2d
427, 431 (Tex. Crim. App. 1989).  Thus, the trial as a whole must be reviewed
and not simply isolated incidents of counsel’s performance.  Cannon, 668
S.W.2d at 403.  The standard of review for ineffective assistance of counsel is the same for
all phases of the trial.  See Hernandez v. State, 988 S.W.2d 770, 772
(Tex. Crim. App. 1999) (Strickland standard is standard for all ineffective assistance of counsel claims).

A
defendant seeking relief must demonstrate:  (1) that counsel’s performance
failed to constitute reasonably effective assistance by falling below an
objective standard of reasonableness under the prevailing professional norms;
and (2) that there is a reasonable probability that but for counsel's
deficient performance, the result of the proceeding would have been different. 
Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Bone v. State,
77 S.W.3d 828, 833 (Tex. Crim. App. 2002).  A “reasonable probability” is
defined as “a probability sufficient to undermine confidence in the outcome.”  Strickland,
466 U.S. at 694, 104 S. Ct. at 2068; Bone, 77 S.W.3d at 832.

We begin our analysis
with a rebuttable presumption that counsel is better positioned than the
appellate court to judge the pragmatism of the particular case and that he made
all significant decisions in the exercise of reasonable professional judgment. 
Delrio v. State, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992).  The
presumption may be rebutted by evidence of counsel’s reasoning or lack thereof.
 See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  In
the absence of evidence of counsel’s reasons for the challenged conduct, the
appellate court will assume a strategic motivation and will not conclude that
the conduct was deficient unless the conduct was so outrageous that no
competent attorney would have engaged in it.  Garcia v. State, 57 S.W.3d
436, 440 (Tex. Crim. App. 2001), cert. denied, 537 U.S. 1195 (2003); see
Thompson v. State, 9 S.W.3d 808, 814–15 (Tex. Crim. App. 1999).  Generally,
performance of counsel cannot be adequately examined based on a trial court record.  Kemp v. State, 892 S.W.2d 112, 115 (Tex. App.—Houston
[1st Dist.] 1994, pet. ref’d).  Finally, an appellant’s failure to satisfy one
prong of the Strickland test negates a court’s need to consider the
other prong.  Strickland, 466 U.S. at 697, 104 S. Ct. 2069; Garcia,
57 S.W.3d at 440.

Here,
we find no evidence rebutting the presumption that Sanders’s trial counsel made
all significant decisions in the exercise of reasonable professional judgment. 
Sanders contends that trial counsel was ineffective because he did not call an
alleged eyewitness to the stand who would have said that Sanders’s encounter
with Henninge was an accident.  Even though this court abated this appeal and
remanded for a hearing, allowing trial counsel to give his reasons for not
calling this witness, Sanders did not call trial counsel to the hearing.  And,
as the State argues, Sanders’s trial counsel’s choosing not to call this
witness may have been reasonable trial strategy in that trial counsel may have
concluded that this witness was unreliable and unbelievable.  The record does
show that trial counsel made numerous objections and repeatedly attempted to
elicit testimony that Sanders did not intentionally harm Henninge.  With the
limited record this court has to review, we hold that Sanders has failed to
meet his burden of proving by a preponderance of the evidence that his trial
counsel was ineffective.  Accordingly, we overrule Sanders’s second point.

C.      Restitution

          In
his third point, Sanders argues that the trial court abused its discretion by
ordering him to pay $21,541 in restitution to Henninge.  The State argues (1) that
Sanders failed to preserve this issue for our review and (2) that the
restitution amount was supported by the record and was within the sound
discretion of the trial court to impose.  Assuming without deciding that
Sanders has preserved this issue for our review, we agree with the State that
the trial court did not abuse its discretion in ordering the amount of
restitution to be paid.

          We
review a trial court’s decision to order restitution for an abuse of
discretion.  See Campbell v. State, 5 S.W.3d 693, 696 (Tex. Crim. App.
1999); Burris v. State, 172 S.W.3d 75, 77 (Tex. App.—Fort Worth 2005, no
pet.); Lemos v. State, 27 S.W.3d 42, 45 (Tex. App.—San Antonio 2000,
pet. ref’d).  An abuse of discretion occurs if the trial court acts without
reference to any guiding rules or principles or acts arbitrarily or
unreasonably.  Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App.
1991) (op. on reh’g).  A trial court abuses its discretion when it sets
restitution in an amount that is unjust or unsupported by facts.  Campbell, 5 S.W.3d at 696 (citing Cartwright
v. State, 605 S.W.2d 287, 289 (Tex. Crim. App. [Panel Op.] 1980)).

The
code of criminal procedure provides that “the court that sentences a defendant
convicted of an offense may order the defendant to make restitution.”  Tex.
Code Crim. Proc. Ann. art. 42.037(a) (Vernon Supp. 2010); see also Tex.
Const. art. I, § 30(b)(4); Weir v. State, 278 S.W.3d 364, 366–67
(Tex. Crim. App. 2009).  In determining the amount of restitution, the court
shall consider “the amount of the loss sustained by any victim” and “other
factors the court deems appropriate.”  Tex. Code Crim. Proc. Ann. art.
42.037(c).  “The court shall impose an order of restitution that is as fair as
possible to the victim,” and the “standard of proof is a preponderance of the
evidence.”  Tex. Code Crim. Proc. Ann. art. 42.037(e), (k).  See Burris,
172 S.W.3d at 78 (explaining that “testimony from a . . . victim of
the crime with personal knowledge of the amount of [damages] incurred . . .
is adequate to support a restitution order”).  The burden of demonstrating the
amount of the loss sustained by a victim as a result of the offense is on the
prosecuting attorney.  Tex. Code Crim. Proc. Ann. art. 42.037(k).

          In
this case, the State introduced several exhibits that specifically detail the
amount owed by Henninge to numerous medical providers in relation to the
injuries he sustained on April 22, 2007.  According to bills introduced at
trial, the total cost of Henninge’s medical treatment owing as a result of the
injuries he sustained was $21,541—the amount the trial court awarded as
restitution.  At the sentencing hearing, there was also testimony that the
bills in relation to Henninge’s injuries were delinquent and that any
restitution would go to compensate Henninge in payment of his medical
expenses.  Furthermore, a jury found Sanders guilty of the assault that caused
Henninge’s injuries.  See Campbell, 5 S.W.3d at 697 (“A trial court may
not order restitution for an offense for which the defendant is not criminally
responsible.”).  We hold that the record supports the restitution ordered by
the trial court.  Thus, the trial court did not abuse its discretion.  We
overrule Sanders’s third point.

IV.  Conclusion

          Having
overruled all three of Sanders’s points, we affirm the trial court’s judgment.

 

 

 

BILL MEIER
JUSTICE

 

PANEL:  DAUPHINOT, WALKER,
and MEIER, JJ.

 

DAUPHINOT, J. filed a
dissenting opinion.

 

PUBLISH

 

DELIVERED: 
May 5, 2011

 




 

 









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00221-CR

 

 


 
 
 Thoys Dewayne Sanders
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM County
Criminal Court No. 4 OF Tarrant COUNTY

------------

DISSENTING
OPINION

------------

I
write separately because the majority appears to place a burden of proof on
Appellant.  The majority appears to say, in part, that the evidence is
sufficient because “Grauerholz’s reaction was to immediately exclaim, ‘I can’t
believe you hit my boyfriend.’  And Sanders did not deny hitting Henninge.”[1] 
If the majority requires Appellant to waive his Fifth Amendment right and deny
the offense, I must respectfully dissent.

As
to the allegations of ineffective assistance of counsel, the record reflects
that Appellant made an offer of proof that a specific witness, Jeremiah Langen,
would testify that he witnessed the event and that “[i]t was a complete
accident.”  Appellant argued that the failure of trial counsel to interview or
call Langen, a material witness, was deficient performance on its face.

This
court abated to allow trial counsel to explain his failure to interview or call
Langen to testify.  The majority states that we must presume “that counsel is
better positioned than the appellate court to judge the pragmatism of the
particular case and that he made all significant decisions in the exercise of
reasonable professional judgment,”[2] relying on Delrio v.
State, a jury selection case questioning the wisdom of putting a particular
juror on the panel.[3]

Here,
the question is how can trial counsel justify not calling to the stand or even
interviewing a witness who saw what happened and said that Appellant committed
no assault.  That is a far different issue than jury selection.

Instead
of relying on caselaw that addresses jury selection, we should look at
ineffective assistance cases in which trial counsel failed to investigate and
failed to call witnesses to testify.  We should not create an explanation for
such failure and put it in the mouth of the nontestifying trial counsel.

The
Texas Court of Criminal Appeals has instructed us that

[i]n evaluating the
potential impact of an alibi witness, we must also consider the relative strength
of the State’s case.  We compare the evidence presented by the State with the
evidence the jury did not hear due to trial counsel’s failure to
investigate.[4]

 

Here,
Henninge did not remember what had happened to him.  Everyone else guessed or
speculated about what had happened.  Only Langen actually saw what had
happened, but trial counsel did not interview him.  What possible trial
strategy could involve not interviewing the only eyewitness?

Because
I cannot think of any, I respectfully dissent.

 

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PUBLISH

 

DELIVERED:  May 5, 2011









[1]Majority op. at 12
(emphasis added).





[2]Id. at 15.





[3]840 S.W.2d 443, 446–47
(Tex. Crim. App. 1992).





[4]Perez v. State, 310
S.W.3d 890, 896 (Tex. Crim. App. 2010) (citations and internal quotations
omitted).