

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00252-CR

JERRY CAMP, JR.　　　　　　　　　　　　　　　　　　　　APPELLANT

V.

THE STATE OF TEXAS　　　　　　　　　　　　　　　　　　　　STATE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

In two issues, Appellant Jerry Camp, Jr. appeals his murder conviction. We affirm.

## II. Factual and Procedural Background

The State charged Camp with committing the murder of Edward Patrick Stricker on or about June 11, 2009, by stabbing Stricker with a knife and a

---

[1]*See* Tex. R. App. P. 47.4.

screwdriver and by strangling Stricker with his hand. Upon Camp's arrest, he waived his *Miranda* rights and gave a confession, the recording of which was played for the jury.

In Camp's confession, he stated that Striker had been "messing around" with Jeri Donna Anderson and that if Camp could not have her, Stricker could not either, so he changed into dark clothes, grabbed a knife in his right hand and a screwdriver in his left hand, and ran to the InTown Suites. From the landing of the hotel, Stricker retreated into his room, and Camp sustained cuts to his body when he jumped through the room's closed window.

Camp said that he heard Anderson say Camp's name and that he chased Stricker into the bathroom and "kick[ed] down the bathroom door" before stabbing Stricker in the lungs and in the heart. While he stabbed Stricker, he said, "I'm gonna kill your ass," and then he strangled Stricker until Stricker stopped gasping for air.

When the interviewing officer, Detective Robert Feagins, asked Camp how he felt about this, Camp said, "I'm glad he's dead." The Tarrant County Medical Examiner's autopsy and testimony confirmed that Stricker's death was asphyxia by strangulation due to assault by another person.

Other evidence at trial included InTown Suites Courtesy Officer Paul Lancy's testimony that Anderson banged on his door at 12:10 a.m. on June 11, 2009, yelling, "[H]e's going to kill him, he's going to kill him," and that he let her in and called the police. Lewisville Police Officer Joel Baker testified that he

2

responded to the call and that when he arrived at InTown Suites room 309, he found a shattered window, blood on the patio, and Camp standing in the middle of the room with his hands covered in blood. When he asked if anyone else was in the room, Camp stated, "[H]e's dead in the bathroom." Police found a screwdriver near the broken bathroom door and found Stricker on the floor between the bathtub and the toilet with several puncture wounds to his head and chest.[2]

As Officer Jay Alexander patted Camp down and handcuffed him, Camp asked him, "Is he dead?" When Camp did not receive a direct answer, he said, "I made sure of it; I choked him until he quit kicking." Firefighter paramedic Ryan Ray also testified that Camp asked him if Stricker was dead, and when Ray confirmed that he was, Camp said, "[G]ood, then I did my job." Additionally, Officer John Martinez testified that police officers escorted Camp past the patrol car in which Officer Martinez and Anderson were sitting, at which time Anderson asked Camp whether "he killed him," and Camp said, "[Y]es." And on the way to the jail, Officer Alexander took Camp to Lewisville Medical Center where Camp told several nurses that he had just killed someone.

---

[2]The trial court admitted photographs of the blood on the sidewalk; the broken window; cuts on Camp's face, hands, arms, belly, and back; the knife; the broken bathroom door; the screwdriver; and a comparison of the screwdriver to a puncture wound on Stricker's chest.

3

Two Lewisville Detectives subsequently questioned Anderson. One of the detectives, Brian Smith, testified over Camp's hearsay and *Crawford*[3] objections about what Anderson told him about that night.[4]

A jury convicted Camp of murder. During the punishment phase of trial, Camp requested that he be allowed to testify for the limited purpose of rebutting a witness's testimony that Camp had sexually assaulted her in the past. The trial court denied this request. The jury assessed life imprisonment, and the trial court sentenced him accordingly. *See* Tex. Penal Code Ann. §§ 12.32, 19.02(b)(1), (c) (West 2011). This appeal followed.

### III. Confrontation Clause

In his first issue, Camp complains that Anderson's statements to Detective Smith were hearsay and that their admission violated the Confrontation Clause. Assuming, without deciding, that the trial court erred by admitting Detective Smith's testimony of Anderson's out-of-court statements, we turn to a harm analysis.

The admission of otherwise inadmissible hearsay is nonconstitutional error, which we disregard if the error did not affect the appellant's substantial rights. Tex. R. App. P. 44.2(b); *Moon v. State*, 44 S.W.3d 589, 594 (Tex. App.—

---

[3]*Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004).

[4]Anderson did not testify at trial, and we have set out Detective Smith's testimony regarding her out-of-court statements below, in our discussion of Camp's first issue.

4

Fort Worth 2001, pet. ref'd). However, *Crawford* error is subject to the harmless error standard of review, and we must reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment. Tex. R. App. P. 44.2(a); *Langham v. State*, 305 S.W.3d 568, 582 & n.42 (Tex. Crim. App. 2010). In deciding whether the error is harmless beyond a reasonable doubt, we must consider several *Crawford*-specific factors: (1) the importance of the hearsay evidence to the State's case, (2) whether the hearsay evidence was cumulative of other evidence, (3) the presence or absence of other evidence corroborating or contradicting the hearsay evidence on material points, and (4) the overall strength of the State's case. *Scott v. State*, 227 S.W.3d 670, 690–91 (Tex. Crim. App. 2007) ("With these considerations in mind, the reviewing court must ask itself whether there is a reasonable possibility that the *Crawford* error moved the jury from a state of non-persuasion to one of persuasion on a particular issue.").

We may also consider other constitutional harm factors, if relevant, such as the nature of the error, to what extent it was emphasized by the State, probable collateral implications of the error, and the weight a juror would probably place on the error. *Snowden v. State*, No. PD-1524-10, 2011 WL 4467280, at *4 (Tex. Crim. App. Sept. 28, 2011).[5] The only requirement is that

---

[5]In *Snowden*, the court of criminal appeals expressly overruled the following factors from *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989): identifying the source of the constitutional error and whether declaring the

5

we must take into account every circumstance apparent in the record that logically informs our constitutional error analysis. *Id.*

Detective Smith's testimony regarding what Anderson told him included the following, in relevant part:

Q. . . . So what did [Anderson] tell you?

A. She told us that her – she and the deceased were in their motel room. The deceased was worried about the defendant coming back over there. He went outside to check, the deceased did, to see if Mr. Camp was there.

. . . .

Q. Okay. So she tells you the deceased went out to where?

A. On the landing of the third floor. Pretty much right after he walked out, the door shut. He comes running back – [Stricker] comes running back in . . . .

. . . .

Q. . . . So [Stricker] comes back into the room. What does [Anderson] tell you happened next?

A. [Anderson] said that the – Mr. Camp came crashing through the window chasing Stricker. Stricker is running through the hotel room toward the back of the room to get away from Mr. Camp. [Anderson] said he's holding something like a knife, what she thought was a knife.

. . . .

Q. . . . What does [Anderson] tell you happens next?

---

error harmless would encourage repeat performances by the State. 2011 WL 4467280, at *4.

6

A. [Anderson]'s screaming, runs out of the hotel room, and she runs down to the security office and gets help from the security, on-site security, where they're calling the police.

Q. Did [Anderson] tell you whether or not she saw any part of the initial stabbing?

A. No, she did not, to my knowledge, see any part of the stabbing.

Q. She had already left the room by then?

A. Yes, ma'am.

In sum, the complained-of statements were that (1) Anderson and Stricker were in their motel room, (2) Stricker walked onto the third-floor landing because he was worried Camp was there, (3) Stricker ran back into the room almost immediately, (4) Camp crashed through the window, (5) Camp chased Stricker toward the back of the room, (6) Camp was holding what Anderson thought was a knife, and (7) Anderson ran out of the room screaming and found the onsite security officer, who called the police.

While the information contained in these statements was important to the State's case under the first *Crawford*-specific factor because it related to the actual commission of crime, the evidence was cumulative of other corroborating evidence under the second and third factors, as set out above, particularly with reference to Camp's confession and specific description of his preparation and commission of the crime. *See Scott*, 227 S.W.3d at 690; *Gutierrez v. State*, 150 S.W.3d 827, 831–32 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (finding harmless error, even though the erroneously admitted evidence was important to

7

the State's case, partly because the appellant's confession corroborated the evidence). The only portions of Anderson's statements that Camp's confession did not address were why Stricker went outside, how long Stricker was there before retreating, and that she left screaming and found a courtesy officer, who called the police. However, these details were immaterial to the State's case because they were irrelevant to the murder charge and had no bearing on the perpetrator's mental state, *see* Tex. Penal Code Ann. § 19.02(b)(1) (West 2011). Moreover, Lancy provided the same testimony about calling the police after Anderson banged on his door and screamed that "he's going to kill him." Therefore, because the jury heard all of the information contained in Anderson's statements firsthand from other sources, Anderson's statements were cumulative of other evidence and unimportant to the State's case. *See Scott*, 227 S.W.3d at 690.

Turning to the fourth factor, apart from Anderson's statements, the State had a very strong case against Camp. *See id.* As set out above, Camp confessed to committing the crime, and several other witnesses testified about finding Camp at the scene with bloody hands and hearing Camp's admissions that he had committed the crime. Further, the State's photographs revealed that the physical evidence supported Camp's confession and the other witnesses' testimonies, from the blood-stained breezeway and the shattered window to the knife and the screwdriver recovered at the scene, as did the testimony about Stricker's autopsy results. Therefore, the testimonial and physical evidence gave

8

the State a strong case against Camp apart from Anderson's statements. *See Simpson v. State*, 119 S.W.3d 262, 271 (Tex. Crim. App. 2003) (finding harmless error when evidence of guilt was strong and erroneously admitted statement was corroborated by other evidence adduced at trial), *cert. denied*, 542 U.S. 905 (2004).

Turning to the relevant *Harris* factors, the nature of the error, if any, was the erroneous admission of evidence. *See Snowden*, 2011 WL 4467280, at *4. As set forth above, the admission had little, if any, collateral implications in light of Camp's confession, the corroborating testimony, and the physical evidence. *See id.* Finally, the State did not mention Anderson's statements, much less emphasize them, during its opening statement or its closing argument or during the punishment phase. *See id.* Instead, during closing arguments, the State emphasized Camp's confession and the testimonies of Ray, Officer Baker, Officer Alexander, and Officer Martinez.

Accordingly, no reasonable possibility exists that the admission of Anderson's statements, even if erroneous, "moved the jury from a state of non-persuasion to one of persuasion." *See Scott*, 227 S.W.3d at 690. Applying the *Crawford*-specific factors and the relevant *Harris* factors, we hold beyond a reasonable doubt that if the trial court erred by admitting Detective Smith's testimony of Anderson's statements, this did not contribute to Camp's conviction or punishment. *See Snowden*, 2011 WL 4467280, at *4; *Scott*, 227 S.W.3d at 690–91; *Harris*, 790 S.W.2d at 586–87.

9

Having concluded that any error was harmless, we do not reach the question of whether the statements were inadmissible hearsay subject to the nonconstitutional harm test. *See* Tex. R. App. P. 47.1; *Guidry v. State*, 9 S.W.3d 133, 151 n.14 (Tex. Crim. App. 1999) ("Although the statements were also inadmissible under the Rules of Evidence, we will not conduct a separate harm analysis under Rule of Appellate Procedure 44.2(b), since subsection (a) establishes a more stringent standard than subsection (b)."), *cert. denied*, 531 U.S. 837 (2000). We overrule Camp's first issue.

## IV. Punishment

In his second issue, Camp complains that the trial court erred by denying his request to testify for the limited purpose of rebutting evidence of an extraneous offense offered by the State at the punishment phase of the trial. However, a defendant may not testify before the jury for a limited purpose. *Myre v. State*, 545 S.W.2d 820, 825–26 (Tex. Crim. App. 1977), *overruled on other grounds*, *Rabbani v. State*, 847 S.W.2d 555 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 926 (1993). If a defendant testifies, "he is subject to the same rules governing examination and cross-examination as any other witness, whether he testifies at the guilt-innocence stage or at the punishment stage of the trial. . . . , except where there are overriding constitutional or statutory prohibitions." *Cantu v. State*, 738 S.W.2d 249, 255 (Tex. Crim. App.), *cert. denied*, 484 U.S. 872 (1987). Although Camp contends that requiring him to waive his constitutional right to silence in order to contest an extraneous offense lacks fundamental

fairness, "[t]his difficult decision does not impose an impermissible burden upon the exercise [of] Fifth Amendment rights." *Id.* at 256 (rejecting the same contention and deciding that it presents no constitutional violation). Therefore, the trial court did not err by overruling Camp's request, *see id.* at 257, and we overrule Camp's second issue.

## V. Conclusion

Having overruled both of Camp's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, J.; LIVINGSTON, C.J.; and MEIER, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 10, 2011