In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-11-00686-CR
_____

TERRY DALE CARNES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 359th District Court
Montgomery County, Texas
Trial Cause No. 11-10-10957 CR

**MEMORANDUM OPINION**

In three issues, Terry Dale Carnes appeals his convictions for aggravated kidnapping, aggravated sexual assault, and injury to a child. *See* Tex. Penal Code Ann. § 20.04(a) (West 2011), §§ 22.021(a)(1)(B), 22.04(a)(3) (West Supp. 2013). We affirm the trial court's judgments.

**I. Admissibility of Evidence**

In his first issue, Carnes argues that the trial court erred in permitting the State to introduce multiple "outcry" statements made by N.T. Specifically, Carnes argues that the statement N.T. made to her mother was not admissible under article

1

38.072 because she was not the first person to whom N.T. made a statement. *See generally* Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 2013). Carnes argues alternatively that even if she was a proper outcry witness, the trial court should not have allowed her to go into statements regarding the kidnapping because it was not evidence of aggravated sexual assault. Also within this issue, Carnes argues that the trial court erroneously admitted the testimony of N.T.'s brother as an outcry witness as his testimony did not concern sexual assault or provide details as to the how, when, or where N.T. was assaulted.

Hearsay is inadmissible unless it falls into one of the exceptions in Rules of Evidence 803 or 804, or is allowed "by other rules prescribed pursuant to statutory authority." Tex. R. Evid. 802. Article 38.072 of the Code of Criminal Procedure provides that certain hearsay statements are admissible in the prosecution of certain offenses, including the aggravated sexual assault of a child. Tex. Code Crim. Proc. Ann. art. 38.072, § 1; *see* Tex. Penal Code Ann. § 22.021. Admissible outcry statements are those that "describe the alleged offense" and (1) were made by the child against whom the offense was allegedly committed and (2) were made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(1)(A), (2)-(3). A proper outcry witness is the first adult to whom the child makes a statement that "in some discernible manner describes the alleged

offense." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). The statement "must be more than words which give a general allusion that something in the area of child abuse was going on." *Id.* We review the trial court's determination that an outcry statement is admissible under article 38.072 for an abuse of discretion. *Garcia*, 792 S.W.2d at 92. "A trial court abuses its discretion if no reasonable view of the record could support the trial court's ruling." *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012).

Carnes argues that N.T.'s brother is not a proper outcry witness. On appeal, the State concedes that N.T.'s statement to her brother that she was "kidnapped" was not an outcry statement. Carnes' challenge to the status of N.T.'s mother as a proper outcry witness rests entirely on a finding that the brother was the proper outcry witness. However, N.T.'s brother did not testify to any statement of the victim describing the alleged aggravated sexual assault. The extent of the victim's statement to her brother was that she had been kidnapped. The brother testified that she gave him no other details regarding what had happened to her. We conclude that N.T.'s brother was not a proper outcry witness under the statute. *See* Tex. Code Crim. Proc. Ann. art. 38.072. Further, there is no suggestion that N.T. provided the details of her sexual assault to anyone before discussing it with her mother. The evidence supports that N.T.'s first description of the offense,

sufficient to constitute the outcry statement as described in article 38.072, was the statement given to her mother. *See* id.

Carnes' argues that even if N.T.'s mother was a proper outcry witness, the trial court should not have allowed her to testify as to N.T.'s statements about having been kidnapped. Carnes argues that aggravated kidnapping is not a listed offense under article 38.072, so the testimony is inadmissible hearsay. The State argues that Carnes' interpretation of the statute would force outcry witnesses "to carve up their testimony and excise essential contextual facts to describe only the acts of sexual abuse."

N.T.'s mother testified that when she arrived home that afternoon she checked on N.T. and saw a big bruise on her face and asked her what had happened. She testified that N.T., age six, told her that she had been kidnapped. She further related that as she was taking N.T. to the hospital to be examined, N.T. pointed to an area outside of their home and said, "'That's where he took me.'" The mother testified that the area N.T. had indicated to her went out to the road, and that N.T. showed her where the man had parked his car on the road.

N.T.'s mother testified that N.T. told her that when the man took her out of the house "he had his hand over her face, over her mouth so she couldn't scream." N.T. told her mother that he held her mouth "real tight." She testified that N.T. told her that he "wrapped his arm around her arms, holding her arms close down to

4

her body to where she couldn't move her arms." She testified that N.T. told her that he "hit her really, really hard."

While these statements support a charge of aggravated kidnapping, they also describe the criminal episode of Carnes' sexual assault of N.T. The trial court did not abuse its discretion when it admitted the testimony regarding N.T.'s statements to her mother about having been kidnapped. *See* art. 38.072.

Carnes' counsel argues that the trial court erred in admitting testimony from N.T.'s brother because it was inadmissible hearsay. The State urges us to affirm the trial court's ruling because the statement was not offered for the truth of the matter asserted but to show how the brother's investigation proceeded, i.e., why the brother contacted his mother that day. The State contends that even if the trial court should have excluded the testimony, any error in admitting it is harmless.

N.T.'s brother testified that N.T. woke him at 10:30 a.m. to fix her breakfast. He testified that he noticed that she had marks on her face that looked like a handprint and started asking her questions about what had happened to her. He testified that she did not want to answer his questions. He continued to ask her questions and eventually she responded, "Fine, I was kidnapped." He testified that she seemed "really upset," like she was "cornered." He continued to question her because he did not believe her. He testified that the more he asked her about it, the

5

more upset she became; then, he called his mom and told her that it looked like someone had slapped N.T. in the face.

Assuming without deciding that the testimony was improperly admitted, our examination of the record leads us to conclude that the alleged error did not affect a substantial right of Carnes. *See* Tex. R. App. P. 44.2(b). The trial court's admission of inadmissible hearsay testimony is non-constitutional error. *Moon v. State*, 44 S.W.3d 589, 594-95 (Tex. App.—Fort Worth 2001, pet. ref'd). We must disregard non-constitutional error that does not affect an appellant's substantial rights. Tex. R. App. P. 44.2(b). We consider an error to affect a person's substantial rights "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). We must analyze the entire record to determine if the trial court's error had no effect or only a slight effect on the jury's decision. *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001).

In the present case, the evidence at issue concerned whether N.T. was abducted under section 20.04 of the Penal Code. *See* Tex. Penal Code Ann. § 20.04. Section 20.01 of the Penal Code defines "'[a]bduct]'" to mean "to restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a

place where he is not likely to be found; or (B) using or threatening to use deadly force." *Id.* § 20.01(2).

In light of the weight of other evidence admitted during the trial tending to show that Carnes kidnapped N.T. from her room, the complained of testimony is cumulative. We conclude the testimony at issue had no effect or only a slight effect on the jury's determination. Therefore, we conclude that even if the trial court erred in admitting the testimony at issue, the error did not affect Carnes' substantial rights. *See* Tex. R. App. P. 44.2(b). We overrule Carnes' first issue.

## II. Severance

In his second issue, Carnes argues that his right to a fair trial was violated because the trial court did not *sua sponte* sever the counts into separate trials. The State argues that Carnes waived any complaint about the joinder of his offenses. Carnes contends, "even though a motion for severance was never brought, the trial court still should have severed the matters against appellant to prevent undue harm."

Section 3.02 of the Penal Code provides that "[a] defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode." Tex. Penal Code Ann. § 3.02(a) (West 2011). Section 3.04(a) provides that "the defendant shall have a right to a severance" when offenses have been consolidated under section 3.02. *Id.* § 3.04(a). Section 3.04 is mandatory;

7

therefore, a trial court has no discretion to refuse a defendant's request to sever. *See id.*

It is undisputed that Carnes did not request a severance of his charged offenses. In fact, the record supports that he actively sought the joinder of his offenses. Carnes' trial counsel placed on the record that it was his and Carnes' decision not to sever these cases. He explained,

> My client wanted to get these cases moving. He's been in jail for a very long period of time. And on top of that, in talking with him and talking about some of the evidence, and as you can tell from my opening, these cases are interrelated. And that was the decision that we made to try these altogether.

Carnes explicitly agreed to the joint disposition of his offenses. We conclude that Carnes has waived any error in the joinder of his claims. *See Barrera v. State*, 978 S.W.2d.665, 670 (Tex. App.—Corpus Christi 1998, pet. ref'd) (holding that a defendant can waive his right to separate trials on offenses not arising from the same criminal episode and that a defendant's express consent to the procedure used waived error on appeal). Carnes's second issue is overruled.

## III. Charge Error

In his third issue, Carnes argues the trial court erred in distributing an erroneous charge. In reviewing a claim of jury charge error in a criminal case, we first determine whether there was error in the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). If we find error and appellant objected to the

8

error at trial, we are required to reverse the conviction if the error "'is calculated to injure the rights of the defendant.'" *Id*. (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). If the appellant failed to object to the error at trial, then it must be fundamental error and we are required to reverse the conviction only if the error was so egregious and created such harm that the defendant "'has not had a fair and impartial trial.'" *Id*. (quoting *Almanza*, 686 S.W.2d at 171).

Carnes' trial counsel did not object to the jury charge as it was originally presented to the jury. The record reflects that while the judge was reading the jury charge to the jury, the prosecutor interrupted the court, and outside the hearing of the jury explained:

> On Count 3, I want to get it out of there before they could see it. Penetration is defined. And it has recently been ruled that's the comment on the evidence. And that it is error to put it in the Charge.
>
> . . . .
>
> And I just saw it when I looked over there.

The trial court then had the jurors return the jury charge for count three. The trial court corrected the error and passed out the new charge. Carnes did not make any objections to the trial court or otherwise assert any concerns regarding the erroneous jury charge that was originally distributed to the jury.

There is not a copy of the original charge in the appellate record and Carnes asserts that a copy of that charge cannot be located. Carnes argues in his brief

9

what he suspects the charge "likely" contained. He then argues that "[a] juror could have easily flipped forward during the recitation of the jury charge and read the damaging sections of the jury charge themselves." He also argues that "[i]t is not certain whether or not all of the copies of the jury charge were retrieved" or "how much the jurors read or knew of the charge before it was recalled by the State and the trial court." There is no evidence in the record to support any of these claims. Carnes' argument is premised on nothing more than speculation, and we will not engage in such conjecture. Carnes has not identified any "actual" harm, but instead has relied upon speculation on what the jury might have seen and considered. *See Bolden v. State*, 73 S.W.3d 428, 434 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (concluding jury charge omitted "good conduct time" portion of the parole instruction, but error was not revisable because the appellant did not identify any "actual harm," but relied on speculation regarding what the jury might have considered) Because Carnes did not object, he must show that the error he now complains of caused him such harm that he did not receive a fair and impartial trial. Carnes has failed to show such harm, so we overrule his third issue. *See Barrios*, 283 S.W.3d at 350.

Having overruled all of Carnes' issues, we affirm the judgment of the trial court.

10

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on October 23, 2013
Opinion Delivered November 13, 2013
Do not publish

Before McKeithen, C.J., Kreger, and Horton, JJ.