James Ray MOON, Appellant,

v.

The STATE of Texas, State.

No. 2–99–506–CR.

Court of Appeals of Texas, Fort Worth.

Jan. 26, 2001.

Rehearing Overruled March 1, 2001.

Discretionary Review Refused May 30, 2001.

---

Law Office of Alex R. Tandy, P.C., and Alex R. Tandy, Fort Worth, for Appellant.

Bruce Isaacks, Criminal District Attorney, Charles E. Orbison, Theo Peugh, and Trisha Baker, Asst. Dist. Attys., Denton, for Appellee.

Panel A: CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

### OPINION

CAYCE, Chief Justice.

James Ray Moon appeals his conviction for the misdemeanor offense of assaulting a family member. *See* TEX. PENAL CODE ANN. § 22.01 (Vernon Supp.2001). In two points, Moon argues that the State failed to prove each element of the offense as

charged in the indictment and that the trial court erred when it admitted the victim's oral and written statements under the excited utterance exception to the hearsay rule. We will affirm.

Moon's wife, Cindy, called the police to their home at 11:59 p.m. on July 30, 1997. When Officer Varnel arrived at the house five minutes later, Cindy approached him, stated that her husband had "beat her," threw her from the couch, dragged her through the house, and injured her lip, elbows, and knees. She also told Officer Varnel that Moon turned the couch upside down, hitting her against the wall. Within forty-five minutes of Officer Varnel's arrival, Cindy gave two written statements regarding the details of the assault. The written statements reflected that Moon turned the couch over, smashing Cindy up against the wall and dragged her onto the floor by her ankles.

Cindy did not testify at trial. The State issued four subpoenas for Cindy to appear before the court, all of which were returned. Ron Keaton, an investigator with the Denton County District Attorney's office, testified that he could not find Cindy through the "normal channels" he uses to locate witnesses and victims, which includes contacting the telephone numbers in the victim's file and searching computer databases for the victim.

Mr. Keaton began to search for Cindy two to three months before trial and he last attempted to located her four to six weeks prior to trial. He checked the telephone numbers and contacts in Cindy's file "a couple of different times," but none of those contacts "turned out to be any good." Mr. Keaton also contacted Cindy's father, who told him that he did not know where Cindy was and did not know how to contact her. Additionally, Mr. Keaton attempted to locate Cindy by searching the county computer system, which only

showed one record for Cindy: the complaint at issue in this case. Finally, he searched for Cindy on a "people-finder" computer program, which yielded no results either. Mr. Keaton admitted that he did not contact the Department of Public Safety or other law enforcement agencies, but explained that he did not recall having Cindy's driver's license number.

At trial, Officer Varnel testified as to Cindy's oral statement about the assault. The trial court overruled Moon's objection that the proper predicate had not been laid for the admission of the hearsay statement and admitted the oral statement. The State also introduced the two written statements that Cindy gave to the police officers. Moon objected that those statements were inadmissible hearsay because they were not excited utterances. The trial court sustained Moon's objection, then allowed the State to establish Cindy's emotional state at the time she gave the written statements. When the State reoffered the written statements, Moon objected that the proper predicate had not been laid, but the trial court overruled his objection and admitted the statements.

### Sufficiency of the Evidence

In point one, Moon contends that there was a fatal variance between the indictment and the proof because the State failed to prove each element of the offense as charged in the indictment. Specifically, Moon contends that the State did not prove that Moon assaulted Cindy or that her injuries were caused with "the defendant's hand." Moon essentially raises a legal sufficiency challenge.

 In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert.*

*denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex.Crim.App.), *cert. denied,* 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim.App.1991).

■ In this case, Officer Varnel testified that Cindy told him that her husband "beat her." The State also presented evidence at trial that Moon grabbed Cindy, threw her from the couch, and dragged her across the floor. It was reasonable for the jury to infer that he accomplished these actions by using his hands. Therefore, the evidence is legally sufficient to support a finding that Moon caused Cindy's injuries with his hands.

■ In the same point, Moon also alleges that the evidence is factually insufficient to prove each element of the offense. We may only consider the factual sufficiency of the evidence if the issue is "properly raised." *Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App.1996); *see also Roper v. State,* 917 S.W.2d 128, 132 (Tex.App.—Fort Worth 1996, pet. ref'd) (dictum). In order to properly raise a factual sufficiency point, the defendant must make clear that he "wants a comparative weight of the evidence review." *Roper,* 917 S.W.2d at 132. Factual sufficiency is not properly raised where appel-

lant's brief merely claims factual insufficiency without setting out the proper standard of review, analyzing why the facts fall short of that standard, or discussing the authorities upon which he relied. *McDuff,* 939 S.W.2d at 613; *Naff v. State,* 946 S.W.2d 529, 531 (Tex.App.— Fort Worth 1997, no pet.).

Moon does not discuss in his brief any disputed material facts or attempt to explain why the evidence supporting his conviction is factually insufficient. Consequently, Moon's factual sufficiency complaint is not properly raised. Point one is overruled.

### Excited Utterance

■ In point two, Moon contends that the trial court erred in admitting Cindy's oral and written statements to the police officers under the excited utterance exception to the hearsay rule. We review a trial court's decision to admit or exclude hearsay evidence under an abuse of discretion standard. *Coffin v. State,* 885 S.W.2d 140, 149 (Tex.Crim.App.1994). The trial court's ruling will not be reversed as long as it is within the "zone of reasonable disagreement." *Couchman v. State,* 3 S.W.3d 155, 158 (Tex.App.—Fort Worth 1999, pet. ref'd).

■ The rules of evidence provide an exception to the hearsay rule for excited utterances, described as:

A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

Tex. R. Evid. 803(2). This exception is founded on the belief that the statements made are involuntary and do not allow the declarant an adequate opportunity to fabricate, ensuring their trustworthiness. *Couchman,* 3 S.W.3d at 159. To determine whether a statement qualifies as an

excited utterance, (1) the statement must be the product of a startling occurrence, (2) the declarant must have been dominated by the emotion, excitement, fear, or pain of the occurrence, and (3) the statement must be related to the circumstances of the startling occurrence. *Id.* Other factors to consider are whether the statements are spontaneous or responses to questions and how much time has elapsed between the startling event and the statement. *See Wood v. State,* 18 S.W.3d 642, 652 (Tex.Crim.App.2000) (evaluating whether statement was excited utterance after fourteen-month delay); *Bondurant v. State,* 956 S.W.2d 762, 766 (Tex.App.—Fort Worth 1997, pet. ref'd) (determining that statement was excited utterance even though made in response to questions).

### A. Cindy's Oral Statements

■ Officer Varnel testified that when he responded to the disturbance call, Cindy came from one of the houses and told him that her husband had "beat her" approximately thirty minutes earlier when they had an argument about the dog. According to Officer Varnel, Cindy said that "her husband had thrown her off the couch and drug her through the house." When the State asked about Cindy's demeanor, Officer Varnel stated, "She was somewhat upset. I don't recall whether or not she was actually crying, but she was upset and scared." He also testified that "[s]he seemed generally scared to go back in the house even with us there, was genuinely afraid of her husband."

Based on Officer Varnel's testimony, we conclude that the trial court did not abuse its discretion in admitting Cindy's oral statements under the excited utterance exception to the hearsay rule. His testimony shows that Cindy made the oral statements while dominated by her emotions, fear, and excitement from Moon's assault,

and that they were related to the startling occurrence of the assault.

### B. Cindy's Written Statements

■ Within forty-five minutes of Officer Varnel's arrival, Cindy gave two written statements. Officer Varnel testified that "[s]he had calmed down a little bit by this point, but she was still scared. And she was filling them out as best she could." When questioned outside the presence of the jury, Officer Varnel agreed that Cindy "was not excited at the time she made these statements." He also said, "I wouldn't say that she was calmed back down to a normal state, but I wouldn't also say that she was upset. She had a little time to gather her thoughts about what had happened, but she wasn't back to a normal state." Officer Varnel, however, described Cindy's state of mind as "[a]bnormal. I wouldn't consider her calm or normal day-to-day state of mind, a little agitated maybe, but I wouldn't use the word excited or upset." The trial court admitted Officer Varnel's testimony and Cindy's written statements over Moon's objection.

Although there are arguable inconsistencies in Officer Varnel's testimony regarding Cindy's state of mind when she gave the written statements, we believe that, when the testimony is viewed in the context of the entire record, Cindy's written statements are, as a matter of law, not excited utterances.. We, therefore, conclude that the trial court abused its discretion in admitting them.

■ Having determined that the trial court erred in admitting the written statements, we must next determine whether this error harmed Moon. *See* TEX. R. APP. P. 44.2. The admission of otherwise inadmissible hearsay is a nonconstitutional error. *Armstead v. State,* 977 S.W.2d 791, 798 (Tex.App.—Fort Worth

1998, pet. ref'd). Therefore, we are to disregard the error unless it affected Moon's substantial rights. *See* TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *Coggeshall v. State,* 961 S.W.2d 639, 643 (Tex.App.—Fort Worth 1998, pet. ref'd) (en banc). In making this determination, we review the record as a whole. *Kotteakos,* 328 U.S. at 764–65, 66 S.Ct. at 1248.

The State urges that the admission of the written statements was harmless because the written statements contained essentially the same information as the oral statements that had already been presented to the jury. We agree.

In her oral statements, Cindy said that Moon beat her, threw her off the couch, dragged her through the house, and dumped the couch over, causing her to hit the wall. In her first written statement, Cindy made the following allegations:

> After 10 pm—Jimmy & I were headed for bed. His and my dog were running—Amber (rottweiller) & Slick (mutt). Amber fought with the dog next door—Husky (Girl)[.] I went out and stopped the fight—grabbing Amber by the collar and bringing her back inside. Jimmy got mad at me—told me to sleep on the couch—which I did. He got up out of bed—turned the couch over putting me up against the wall. Then he put the couch down and dragged me

onto the floor by my ankles—It bruised my elbows and arms. He kept asking me why I did this to his dog. I climbed back on the couch—he again turned the couch over—smashing me against the wall—cutting my lip.

> At this point I grabbed the phone and ran next door to call 911.

The second written statement contains similar allegations.

The inadmissible written statements contain essentially the same information as the admissible oral statements. The written statements merely add details about how the fight began over the dog and how Moon threw Cindy from the couch. We, therefore, hold that the trial court's error in admitting Cindy's written statements did not have a substantial or injurious affect on the jury's verdict and did not affect Moon's substantial rights.[1] *See King,* 953 S.W.2d at 271. We thus disregard the error and overrule point two. *See* TEX. R. APP. P. 44.2(b).

Having overruled each of Moon's points, we affirm the trial court's judgment.

DAUPHINOT, J. filed a concurring opinion.

DAUPHINOT, Judge, concurring.

I concur in the result only because Appellant's objection to the admission of the complainant's oral statement was insufficient. Appellant objected on the grounds that "the proper predicate's not been laid for the attempt to subvert the hearsay rule." An objection preserves only the specific ground cited.[1] A general objection

---

1. Moon also argues that he was harmed because he was denied the right to confront and cross-examine Cindy. However, the declarant's availability to testify as a witness is immaterial when determining whether a statement is admissible under the excited utterance exception to the hearsay rule. TEX. R. EVID. 803. Thus, the admission of the oral

statement as an excited utterance did not harm Moon by violating his right to confront Cindy.

1. TEX. R. APP. P. 33.1; *Mosley v. State,* 983 S.W.2d 249, 265 (Tex.Crim.App.1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070, 119 S.Ct.

is not sufficient to apprise the trial court of the complaint urged and thus preserves nothing for review.[2] Here, Appellant did not inform the trial judge of the specific foundation requirement that the prosecution had not satisfied.[3] In addition, Appellant did not object to the admission of the oral statement on the grounds of a denial of confrontation, which would have raised a constitutional question. Accordingly, I would overrule Appellant's second issue as not preserved.

I am particularly concerned, however, that we generally have lost sight of the real meaning of an "excited utterance" that would invest clear hearsay with such "indicia of reliability" as to justify its admissibility.[4] Under earlier Texas criminal law, what we now refer to as an "excited utterance" was called a "spontaneous exclamation." In our civil law, it was generally referred to as a "res gestae" statement. Because we no longer have separate bodies of civil and criminal rules of evidence, we cannot ignore the guidance given in civil cases in our analysis of excited utterances. For a witness's statement to be admissible as res gestae, it must have been shown to be a spontaneous reaction to an exciting event.[5] The circumstances must have been such as to create a reasonable presumption that the statement was the spontaneous utterance of thought created by or out of the occurrence itself.[6]

It is not sufficient for a witness to state, "She seemed excited to me." Testimony that the declarant seemed "somewhat upset" at the time she uttered the statement would never have satisfied the requirement that the declarant be "in the grip of violent emotion," rendering her incapable of fabrication.[7] Moreover, a statement that is a mere narrative of a past event does not qualify as an excited utterance, even if it is made immediately following the event. "The circumstances must show that it was the event speaking through the person and not the person speaking about the event." [8]

I do not agree, therefore, with the majority that the complainant's oral statement to Officer Varnel satisfied the requirements for admission as an excited utterance. Nevertheless, because Appellant did not properly preserve his complaint, I concur in the result.

1466, 143 L.Ed.2d 550 (1999); *Butler v. State*, 872 S.W.2d 227, 237 (Tex.Crim.App.1994), *cert. denied*, 513 U.S. 1157, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995).

2. *Fierro v. State*, 706 S.W.2d 310, 317–18 (Tex.Crim.App.1986).

3. *See Harris v. State*, 565 S.W.2d 66, 70 (Tex. Crim.App.1978).

4. *See Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).

5. *Hartford Accident & Indem. Co. v. Hale*, 400 S.W.2d 310, 310 (Tex.1966); *Southwestern Bell Tel. Co. v. Griffith*, 575 S.W.2d 92, 103 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

6. *Truck Ins. Exch. v. Michling*, 364 S.W.2d 172, 174 (Tex.1963); *Albertson's, Inc. v. Mungia*, 602 S.W.2d 359, 362 (Tex.Civ.App.—Corpus Christi 1980, no writ).

7. *King v. State*, 631 S.W.2d 486, 491–92 (Tex. Crim.App.), *cert. denied*, 459 U.S. 928, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982).

8. *First Southwest Lloyds Ins. Co. v. MacDowell*, 769 S.W.2d 954, 959 (Tex.App.—Texarkana 1989, writ denied); *see also City of Houston v. Quinones*, 142 Tex. 282, 177 S.W.2d 259, 262 (1944); *Malone v. Foster*, 956 S.W.2d 573, 580 (Tex.App.—Dallas 1997), *aff'd*, 977 S.W.2d 562 (Tex.1998).