02-10-252-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

NO. 02-10-00252-CR

 

 


 
 
 JERRY CAMP, JR.
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE
 STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

I.  Introduction

In two issues, Appellant Jerry Camp,
Jr. appeals his murder conviction.  We affirm.

II.  Factual and Procedural
Background 

The State charged Camp with
committing the murder of Edward Patrick Stricker on or about June 11, 2009, by
stabbing Stricker with a knife and a screwdriver and by strangling Stricker
with his hand.  Upon Camp’s arrest, he waived his Miranda rights and
gave a confession, the recording of which was played for the jury.

In Camp’s confession, he stated that
Striker had been “messing around” with Jeri Donna Anderson and that if Camp
could not have her, Stricker could not either, so he changed into dark clothes,
grabbed a knife in his right hand and a screwdriver in his left hand, and ran
to the InTown Suites.  From the landing of the hotel, Stricker retreated into
his room, and Camp sustained cuts to his body when he jumped through the room’s
closed window.

Camp said that he heard Anderson say
Camp’s name and that he chased Stricker into the bathroom and “kick[ed] down
the bathroom door” before stabbing Stricker in the lungs and in the heart. 
While he stabbed Stricker, he said, “I’m gonna kill your ass,” and then he
strangled Stricker until Stricker stopped gasping for air.

When the interviewing officer, Detective
Robert Feagins, asked Camp how he felt about this, Camp said, “I’m glad he’s
dead.”  The Tarrant County Medical Examiner’s autopsy and testimony confirmed
that Stricker’s death was asphyxia by strangulation due to assault by another
person.

Other evidence at trial included
InTown Suites Courtesy Officer Paul Lancy’s testimony that Anderson banged on
his door at 12:10 a.m. on June 11, 2009, yelling, “[H]e’s going to kill him,
he’s going to kill him,” and that he let her in and called the police.  Lewisville
Police Officer Joel Baker testified that he responded to the call and that when
he arrived at InTown Suites room 309, he found a shattered window, blood on the
patio, and Camp standing in the middle of the room with his hands covered in
blood.  When he asked if anyone else was in the room, Camp stated, “[H]e’s dead
in the bathroom.”  Police found a screwdriver near the broken bathroom door and
found Stricker on the floor between the bathtub and the toilet with several
puncture wounds to his head and chest.[2]

As Officer Jay Alexander patted Camp
down and handcuffed him, Camp asked him, “Is he dead?”  When Camp did not
receive a direct answer, he said, “I made sure of it; I choked him until he
quit kicking.”  Firefighter paramedic Ryan Ray also testified that Camp asked
him if Stricker was dead, and when Ray confirmed that he was, Camp said, “[G]ood,
then I did my job.”  Additionally, Officer John Martinez testified that police
officers escorted Camp past the patrol car in which Officer Martinez and Anderson
were sitting, at which time Anderson asked Camp whether “he killed him,” and
Camp said, “[Y]es.”  And on the way to the jail, Officer Alexander took Camp to
Lewisville Medical Center where Camp told several nurses that he had just
killed someone.

Two Lewisville Detectives
subsequently questioned Anderson.  One of the detectives, Brian Smith,
testified over Camp’s hearsay and Crawford[3]
objections about what Anderson told him about that night.[4]

A jury convicted Camp of murder. 
During the punishment phase of trial, Camp requested that he be allowed to
testify for the limited purpose of rebutting a witness’s testimony that Camp
had sexually assaulted her in the past.  The trial court denied this request. 
The jury assessed life imprisonment, and the trial court sentenced him
accordingly.  See Tex. Penal Code Ann. §§ 12.32, 19.02(b)(1), (c) (West
2011).  This appeal followed.

III. Confrontation Clause

In his first issue, Camp complains
that Anderson’s statements to Detective Smith were hearsay and that their
admission violated the Confrontation Clause.  Assuming, without deciding, that
the trial court erred by admitting Detective Smith’s testimony of Anderson’s
out-of-court statements, we turn to a harm analysis.

The admission of otherwise
inadmissible hearsay is nonconstitutional error, which we disregard if the
error did not affect the appellant’s substantial rights.  Tex. R. App. P.
44.2(b); Moon v. State, 44 S.W.3d 589, 594 (Tex. App.—Fort Worth 2001,
pet. ref’d).  However, Crawford error is subject to the harmless error standard
of review, and we must reverse unless we determine beyond a reasonable doubt
that the error did not contribute to appellant=s conviction or punishment.  Tex. R.
App. P. 44.2(a); Langham v. State, 305 S.W.3d 568, 582 & n.42 (Tex.
Crim. App. 2010).  In deciding whether the error is harmless beyond a
reasonable doubt, we must consider several Crawford-specific factors:
(1) the importance of the hearsay evidence to the State’s case, (2) whether the
hearsay evidence was cumulative of other evidence, (3) the presence or absence
of other evidence corroborating or contradicting the hearsay evidence on
material points, and (4) the overall strength of the State’s case.  Scott v. State, 227 S.W.3d 670, 690–91 (Tex. Crim.
App. 2007) (“With these considerations in mind, the reviewing court must ask
itself whether there is a reasonable possibility that the Crawford error
moved the jury from a state of non-persuasion to one of persuasion on a
particular issue.”).

We may also consider other constitutional
harm factors, if relevant, such as the nature of the error, to what extent it was
emphasized by the State, probable collateral implications of the error, and the
weight a juror would probably place on the error.  Snowden v. State, No. PD-1524-10, 2011 WL 4467280, at
*4 (Tex. Crim. App. Sept. 28, 2011).[5]
 The only requirement is that we must take
into account every circumstance apparent in the record that logically informs our
constitutional error analysis.  Id.

Detective Smith’s testimony regarding
what Anderson told him included the following, in relevant part:

Q.  . . .  So what did
[Anderson] tell you?

A.  She told us that her – she and the deceased were
in their motel room.  The deceased was worried about the defendant coming back
over there.  He went outside to check, the deceased did, to see if Mr. Camp was
there.

 

. . . .

Q.  Okay.  So she tells you the
deceased went out to where?

A.  On the landing of the third floor.  Pretty much
right after he walked out, the door shut.  He comes running back – [Stricker]
comes running back in . . . .

 

. . . .

Q.  . . .  So [Stricker] comes back
into the room.  What does [Anderson] tell you happened next?

 

A.  [Anderson] said that the – Mr. Camp came crashing
through the window chasing Stricker.  Stricker is running through the hotel
room toward the back of the room to get away from Mr. Camp.  [Anderson] said
he’s holding something like a knife, what she thought was a knife.

 

. . . .

Q.  . . .  What does
[Anderson] tell you happens next?

A.  [Anderson]’s screaming, runs out of the hotel
room, and she runs down to the security office and gets help from the security,
on-site security, where they’re calling the police.

 

Q.  Did [Anderson] tell you whether or not she saw any
part of the initial stabbing?

 

A.  No, she did not, to my knowledge,
see any part of the stabbing.

Q.  She had already left the room by
then?

A.  Yes, ma’am.

In sum, the complained-of statements were
that (1) Anderson and Stricker were in their motel room, (2) Stricker walked
onto the third-floor landing because he was worried Camp was there, (3)
Stricker ran back into the room almost immediately, (4) Camp crashed through
the window, (5) Camp chased Stricker toward the back of the room, (6) Camp was
holding what Anderson thought was a knife, and (7) Anderson ran out of the room
screaming and found the onsite security officer, who called the police.

While the information contained in
these statements was important to the State’s case under the first Crawford-specific
factor because it related to the actual commission of crime, the evidence was
cumulative of other corroborating evidence under the second and third factors,
as set out above, particularly with reference to Camp’s confession and specific
description of his preparation and commission of the crime.  See Scott, 227 S.W.3d at 690; Gutierrez v.
State, 150 S.W.3d 827, 831–32 (Tex. App.—Houston [14th Dist.] 2004, no
pet.) (finding harmless error, even though the erroneously admitted evidence
was important to the State’s case, partly because the appellant’s confession
corroborated the evidence).  The only portions of Anderson’s statements that Camp’s confession did not
address were why Stricker went outside, how long Stricker was there before
retreating, and that she left screaming and found a courtesy officer, who
called the police.  However, these details were immaterial to the State’s case because
they were irrelevant to the murder charge and had no bearing on the
perpetrator’s mental state, see Tex. Penal Code Ann. § 19.02(b)(1)
(West 2011).  Moreover, Lancy provided the same testimony about calling the
police after Anderson banged on his door and screamed that “he’s going to kill
him.”  Therefore, because the jury heard all of the information contained in
Anderson’s statements firsthand from other sources, Anderson’s statements were
cumulative of other evidence and unimportant to the State’s case.  See Scott, 227 S.W.3d at 690.

Turning to the fourth factor, apart
from Anderson’s statements, the State had a very strong case against Camp.  See
id.  As set out above, Camp confessed to committing the crime, and several
other witnesses testified about finding Camp at the scene with bloody hands and
hearing Camp’s admissions that he had committed the crime.  Further, the State’s
photographs revealed that the physical evidence supported Camp’s confession and
the other witnesses’ testimonies, from the blood-stained breezeway and the
shattered window to the knife and the screwdriver recovered at the scene, as
did the testimony about Stricker’s autopsy results.  Therefore, the testimonial
and physical evidence gave the State a strong case against Camp apart from
Anderson’s statements.  See Simpson
v. State, 119 S.W.3d 262, 271 (Tex. Crim. App. 2003) (finding
harmless error when evidence of guilt was strong and erroneously admitted
statement was corroborated by other evidence adduced at trial), cert. denied,
542 U.S. 905 (2004).

Turning to the relevant Harris
factors, the nature of the error, if any, was the erroneous admission of
evidence.  See Snowden, 2011 WL 4467280, at *4.  As set forth
above, the admission had little, if any, collateral implications in light of
Camp’s confession, the corroborating testimony, and the physical evidence.  See
id.  Finally, the State did not mention Anderson’s statements, much less
emphasize them, during its opening statement or its closing argument or during the
punishment phase.  See id.  Instead, during closing arguments, the State
emphasized Camp’s confession and the testimonies of Ray, Officer Baker, Officer
Alexander, and Officer Martinez.

Accordingly, no reasonable
possibility exists that the admission of Anderson’s statements, even if
erroneous, “moved the
jury from a state of non-persuasion to one of persuasion.”  See Scott,
227 S.W.3d at 690.  Applying
the Crawford-specific factors and the relevant Harris factors, we
hold beyond a reasonable doubt that if the trial court erred by admitting Detective
Smith’s testimony of Anderson’s statements, this did not contribute to Camp’s conviction
or punishment.  See Snowden, 2011 WL 4467280, at *4; Scott, 227 S.W.3d at 690–91; Harris,
790 S.W.2d at 586–87.

Having concluded that any error was
harmless, we do not reach the question of whether the statements were inadmissible
hearsay subject to the nonconstitutional harm test.  See Tex. R. App. P.
47.1; Guidry v. State, 9 S.W.3d 133, 151 n.14 (Tex. Crim. App. 1999) (“Although
the statements were also inadmissible under the Rules of Evidence, we will not
conduct a separate harm analysis under Rule of Appellate Procedure 44.2(b),
since subsection (a) establishes a more stringent standard than subsection (b).”),
cert. denied, 531 U.S. 837 (2000).  We overrule Camp’s first issue.

IV.  Punishment

In his second issue, Camp complains that
the trial court erred by denying his request to testify for the limited purpose
of rebutting evidence of an extraneous offense offered by the State at the
punishment phase of the trial.  However, a defendant may not testify before the
jury for a limited purpose.  Myre v. State, 545 S.W.2d 820, 825–26 (Tex.
Crim. App. 1977), overruled on other grounds, Rabbani v. State,
847 S.W.2d 555 (Tex. Crim. App. 1992), cert. denied, 509 U.S. 926 (1993). 
If a defendant testifies, “he is subject to the same rules governing
examination and cross-examination as any other witness, whether he testifies at
the guilt-innocence stage or at the punishment stage of the
trial. . . . , except where there are overriding constitutional
or statutory prohibitions.”  Cantu v. State, 738 S.W.2d 249, 255 (Tex.
Crim. App.), cert. denied, 484 U.S. 872 (1987).  Although Camp contends that
requiring him to waive his constitutional right to silence in order to contest
an extraneous offense lacks fundamental fairness, “[t]his difficult decision
does not impose an impermissible burden upon the exercise [of] Fifth Amendment
rights.”  Id. at 256 (rejecting the same contention and deciding that it
presents no constitutional violation).  Therefore, the trial court did not err
by overruling Camp’s request, see id. at 257, and we overrule Camp’s second
issue.

V.  Conclusion

Having overruled both of Camp’s
issues, we affirm the trial court’s judgment.

 

                                                                             PER
CURIAM

 

PANEL:  MCCOY, J.;
LIVINGSTON, C.J.; and MEIER, J.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  November 10, 2011









[1]See
Tex. R. App. P. 47.4.





[2]The
trial court admitted photographs of the blood on the sidewalk; the broken
window; cuts on Camp’s face, hands, arms, belly, and back; the knife; the
broken bathroom door; the screwdriver; and a comparison of the screwdriver to a
puncture wound on Stricker’s chest.





[3]Crawford
v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004).





[4]Anderson
did not testify at trial, and we have set out Detective Smith’s testimony
regarding her out-of-court statements below, in our discussion of Camp’s first
issue.





[5]In
Snowden, the court of criminal appeals expressly overruled the following
factors from Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989): 
identifying the source of the constitutional error and whether declaring the
error harmless would encourage repeat performances by the State.  2011 WL
4467280, at *4.