# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-12-00716-CR
NO. 03-12-00717-CR
NO. 03-12-00718-CR

**Courtney Trapp, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT
NOS. CR-05-796, CR-11-0974, & CR-11-0983
THE HONORABLE JACK H. ROBISON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Courtney Trapp appeals three trial court judgments: a judgment adjudicating him guilty of aggravated assault, a judgment of conviction for aggravated assault, and a judgment of conviction for family violence assault, repeat offender. *See* Tex. Code Crim. Proc. art. 42.12, § 5(b); Tex. Penal Code §§ 22.01, 22.02. In four points of error on appeal, appellant complains about the admission of hearsay evidence and ineffective assistance of counsel. Finding no reversible error, we affirm the trial court's judgments.

**BACKGROUND[1]**

In October 2006, pursuant to a plea bargain, appellant pled guilty and judicially confessed to the offense of aggravated assault. *See* Tex. Penal Code § 22.02. In February 2007, in accordance with the plea agreement, the trial court deferred a finding of guilt and placed appellant on community supervision for a period of ten years.[2] *See* Tex. Code Crim. Proc. art. 42.12, § 5.

In November 2011, the State filed a motion to adjudicate alleging several violations of appellant's deferred-adjudication community supervision, including the commission of new criminal offenses. In December 2011, appellant was charged in two indictments with two new assault offenses: family violence assault, repeat offender, alleged to have been committed against Angelica Calderon on September 26, 2011, and aggravated assault causing serious bodily injury alleged to have been committed against Angelica Calderon on October 9, 2011. The assault cases were consolidated for trial, and the motion to adjudicate was carried forward to trial.

At trial, the jury heard evidence that on the night of September 26, 2011, appellant and his girlfriend, Angelica Calderon, were driving with a friend in San Marcos when appellant and Calderon began arguing. Eventually they pulled up to the friend's house, and the friend went inside.

---

[1] Because the parties are familiar with the facts of these cases, their procedural histories, and the evidence adduced at trial, we provide only a general overview of the facts and procedural background of these cases. We provide additional facts as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.74. The facts recited are taken from the testimony and other evidence presented at trial.

[2] The record reflects that at the same proceeding, as part of the same plea bargain, appellant pled guilty to five additional counts: four counts of aggravated assault and one count of burglary of a habitation. In accordance with the plea bargain, he was sentenced to five years' imprisonment on each of those counts. Also during that proceeding, appellant pled guilty to the offense of retaliation in a companion case and was sentenced to four years' imprisonment.

Appellant and Calderon stayed outside, and the argument continued. At some point, Calderon attempted to walk away. She began knocking on doors in the neighborhood trying to find someone who could provide her with a phone so she could call for a ride back home to Austin. Appellant followed Calderon and grabbed her and "body slam[med]" her to the ground. He then dragged her by the hair scraping her knees on the concrete causing them to bleed.

The jury also heard evidence that approximately two weeks later, on October 9, 2011, Calderon was again with appellant, this time at his uncle's home in San Marcos, when they again argued. During the altercation, appellant pushed Calderon, spit on her, pulled her hair, and ripped her clothes. After repeated attempts to leave the room that were hindered by appellant blocking the door, Calderon eventually escaped the room. Appellant followed, and a confrontation in the kitchen with knives ensued. Calderon then kicked appellant in his genitals and ran out of the residence. She ran to a neighbor's house to seek help. Appellant pursued her and, outside the door she was knocking on, repeatedly struck Calderon in the face with his fists, continuing to punch her even after she fell to the ground. Appellant ran off, and the neighbor answered the door. Calderon was subsequently transported to the hospital where she received treatment for facial injuries, including a nasal bone fracture and right medial orbital (eye socket) fracture.

The jury convicted appellant of aggravated assault and family violence assault, repeat offender, as alleged in the indictments[3] and assessed prison time and a fine as punishment for each offense: 55 years and a $10,000 fine for the aggravated assault, 20 years and a $10,000 fine for the

---

[3] As proof of the "repeat offender" portion of the family violence assault indictment, the State offered evidence of appellant's prior conviction for family violence assault against his previous girlfriend.

family violence assault. The trial court pronounced sentence in accordance with the jury's verdict. Having carried the State's motion to adjudicate, the trial court made its findings regarding the alleged violations of appellant's community supervision based on the evidence presented during the jury trial. The court found the allegations to be true, adjudicated appellant guilty, and assessed his punishment at 20 years in prison and a $10,000 fine. The court ordered the adjudication sentence to be served consecutive with the two sentences assessed by the jury.[4]

## DISCUSSION

### Hearsay Evidence

Dustin Slaughter, a patrol officer with the San Marcos police department, was dispatched in the early morning hours of September 26, 2011, on a "delayed assault" call and responded to the scene where Calderon was found. During his testimony, the State offered a video recording from the dash-cam of the patrol car of the first responding officer showing Calderon talking to the police officers about the assault.[5] Also during his testimony, the State offered the statement Calderon wrote out on the hood of the patrol car at the scene. In his first point of error,

---

[4] During the oral pronouncement of sentence, the trial judge initially ordered the two sentences assessed by the jury to be served consecutively. However, after the jury was discharged, the State indicated that because the cases had been joined for trial and prosecuted in the same criminal action, cumulative sentences were not authorized. *See* Tex. Penal Code §§ 3.01(2), 3.02(a), (b), 3.03(a). The judge expressed uncertainty about the court's ability to cumulate the sentences but stated, "Well, if we can't do it, we can't do it." The written judgments of conviction reflect that the two sentences assessed by the jury are to be served concurrently with each other but consecutive to the adjudication sentence.

[5] Officer Slaughter testified that another officer located Calderon standing in the middle of the road about a half block away from where Officer Slaughter was. Though the video was not from his patrol car, he immediately went to their location and was present for the conversation recorded on the video which takes place outside the viewing frame of the camera.

appellant argues that the trial court erred in admitting Calderon's recorded statement from the dash-cam video recording (State's Exhibit #18) and Calderon's written statement (State's Exhibit #19) because they were inadmissible hearsay. Specifically, he asserts that the State failed to establish the predicate demonstrating that either statement was an excited utterance.

Preservation of error is a systemic requirement on appeal. *Blackshear v. State*, 385 S.W.3d 589, 590 (Tex. Crim. App. 2012). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010). To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context. Tex. R. App. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). At trial, when the State offered the dash-cam video recording of Calderon's statement, appellant's counsel briefly questioned the officer about whether the recording had been altered or modified. After the officer indicated it had not, appellant's counsel asserted that he had "[n]o objection" to the admission of the video. Consequently, appellant's complaint about the admission of the dash-cam recording, State's Exhibit #18, has not been preserved for appellate review.[6]

---

[6] In his brief, appellant asserts that after the dash-cam recording was admitted but before it was published to the jury, he objected to the exhibit as hearsay "which the trial court treated as a timely objection." However, the record reflects that after the recording was admitted the State attempted to publish it to the jury but encountered technical difficulties. As those were addressed, the prosecutor began questioning Officer Slaughter about the content of the video. Appellant objected to the officer's testimony about what Calderon told him as hearsay. He did not object to the video recording itself. Appellant does not complain about the admission of the officer's testimony on appeal.

Officer Slaughter testified that on the morning of September 26, 2011, at approximately 4:02, he was dispatched for a "delayed assault" call where a female was being followed by her attacker.[7] When Officer Slaughter arrived on the scene, he encountered Calderon speaking to another responding officer. He testified that Calderon was "scared, crying" and "her hair [was] in disarray." She had abrasions on both of her knees that were visibly bleeding and "look[ed] to be in pain." Further, the officer indicated that Calderon was "fearful" and "looking around [for appellant]." Officer Slaughter agreed that Calderon was "still under the stress and the excitement of the event that just occurred to her" when she told the police officers about what had happened. Officer Slaughter also testified about the circumstances under which Calderon made her written statement shortly after his arrival. He indicated that they were still on the scene, the medics had just finished their assessment of Calderon's injuries, and she wrote out the statement on the hood of the patrol car. He testified that she began writing the statement at 4:30 a.m. and reported that she was "still upset, nervous." She had "calmed down somewhat" but it was "obvious that she was still fearful." He agreed that she was "still under the effects of the emotion and the excitement from what had just happened to her" when she wrote out the statement.

Appellant objected to the admission of Calderon's written statement, State's Exhibit #19, as hearsay. The trial court admitted it under the excited-utterance exception to the hearsay exclusion. *See* Tex. R. Evid. 803(2). This exception allows the admission of out-of-court statements relating to a startling event or condition made while the declarant is under the stress of

---

[7] The officer explained that a "delayed assault" call refers to an assault which has already occurred, was not currently ongoing, and where the parties were possibly separated.

excitement caused by the event or condition. *See id.* Appellant contends that the trial court erred in admitting the written statement as an excited utterance because the court lacked a sufficient basis from which to determine that the State "made a predicate showing that [Calderon] was incapable of reflection." We disagree.

For the excited-utterance exception to apply, (1) the exciting event must be startling enough to evoke a truly spontaneous reaction from the declarant, (2) the reaction to the startling event must be quick enough to avoid the possibility of fabrication, and (3) the resulting statement should be sufficiently "related to" the startling event to ensure the reliability and trustworthiness of that statement. *McCarty v. State*, 257 S.W.3d 238, 241–42 (Tex. Crim. App. 2008). Here, Calderon's written statement was undoubtedly related to a startling event—Calderon had just been body slammed to the ground, dragged by her hair, and sustained injuries to her knees. The statement was made approximately 30 minutes after the assault occurred (within 20 minutes of when officers made contact with her); therefore, a relatively short amount of time had elapsed. Finally, the record reflects that Calderon was still under the stress of excitement caused by the assault and dominated by the emotions of the event, particularly fear and pain. Indeed, after describing Caldron's distraught demeanor upon his arrival, Officer Slaughter testified that Calderon was "obviously still fearful" at the time she wrote the statement. Based on these factors, the trial court could conclude that the statement qualified as an excited utterance. *See Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003) (statements made 20 hours after incident by individual who was "scared to death" and "tired" were excited utterances); *Reyes v. State*, 48 S.W.3d 917, 920 (Tex. App.—Fort Worth 2001, no pet.) (witness's statements made 15 minutes after assault were excited utterances because witness

7

was "dominated by the emotion, fear, pain, and excitement resulting from appellant's assault, and that her statement was related to the startling occurrence of the assault").

Appellant argues in his brief, as he did at trial, that the act of writing is a deliberative act and therefore cannot qualify as an excited utterance. An excited utterance is a statement that relates to a startling event or condition, that is made when the declarant is still under the stress of excitement caused by the event or condition. *Coble v. State*, 330 S.W.3d 253, 294 (Tex. Crim. App. 2010); *see* Tex. R. Evid. 803(2). "A 'statement' is an oral or written verbal expression." Tex. R. Evid. 801(a). Appellant cites to no authority, and we find none, excluding written statements from the excited utterance exception.[8] Here, Officer Slaughter expressed that although Calderon had "calmed down somewhat" since his initial contact with her, she kept looking around as she wrote the statement and was obviously still fearful. Further, as the trial court noted, the officer affirmed that she was still under the stress and excitement of the assault. In light of the preceding, we cannot

---

[8] We find appellant's reliance on *Moon v. State*, 44 S.W.3d 589 (Tex. App.—Fort Worth 2001, pet. ref'd), a case out of our sister court of appeals in Fort Worth, to be misplaced. In *Moon*, the appellate court approved the admission of evidence of the victim's oral statements made to the officer shortly after the officer arrived on scene because those statements were made while the victim was dominated by the excitement from the assault. *Id.* at 594. In contrast, the court concluded that when the testimony of the officer who took the assault victim's written statements, 45 minutes after the officer's arrival, was viewed in the context of the entire record, the victim's written statements were not excited utterances. *Id.* Thus, the court held that the trial court erred in admitting the victim's written statements. *Id.* However, the officer's testimony outside the presence of the jury indicated that the victim was no longer under the stress of the assault when the written statements were given. The officer explicitly stated that the victim "was not excited at the time she made these statements" and indicated that "she had a little time to gather her thoughts about what had happened." *Id.* He described the victim's state of mind as "[a]bnormal" but explained that he "wouldn't consider her calm or normal day-to-day state of mind, a little agitated maybe, but I wouldn't use the word excited or upset." *Id.* No such testimony was given here.

say that the trial court erred in determining that Calderon was still under the stress of excitement caused by the assault. *See* Tex. R. Evid. 803(2). Thus, the trial court did not abuse its discretion by admitting Calderon's written statement under the excited-utterance exception to the hearsay-exclusion rule. *See Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006) (review of trial court's determination of whether evidence is admissible under excited-utterance exception to hearsay rule is for abuse of discretion).

Moreover, even assuming the trial court erred in admitting Calderon's written statement, we would nevertheless conclude that the error did not constitute reversible error. *See* Tex. R. App. P. 44.2(b). The erroneous admission of evidence is non-constitutional error. *Kirby v. State*, 208 S.W.3d 568, 574 (Tex. App.—Austin 2006, no pet.); *see Coble*, 330 S.W.3d at 280; *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). Non-constitutional error is reversible only if it affects the substantial rights of the accused. *See* Tex. R. App. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). We will not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance the error did not influence the jury, or influenced the jury only slightly. *Barshaw*, 342 S.W.3d at 93; *Kirby*, 208 S.W.3d at 574.

In assessing potential harm, our focus is not on whether the outcome of the trial was proper despite the error but on whether the error had a substantial or injurious effect or influence on the jury's verdict. *Barshaw*, 342 S.W.3d at 93–94. We review the entire record to ascertain the effect or influence on the verdict of the wrongfully admitted evidence. *Id.* at 93; *see Coble*, 330 S.W.3d at 280 (in conducting harm analysis "we examine the entire trial record and calculate,

9

as much as possible, the probable impact of the error upon the rest of the evidence"); *see also Moon v. State*, 44 S.W.3d 589, 595 (Tex. App.—Fort Worth 2001, pet. ref'd). We consider all the evidence that was admitted at trial, the nature of the evidence supporting the verdict, the character of the alleged error, and how the evidence might be considered in connection with other evidence in the case. *Barshaw*, 342 S.W.3d at 94. We may also consider the jury instructions, the parties' theories of the case, closing arguments, voir dire, and whether the State emphasized the error. *Id.*; *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

In her testimony at trial, Calderon described the events of that night, providing details of appellant body slamming her to the ground and dragging her by her hair. Her testimony was consistent with the statement recorded on the dash-cam of the patrol car immediately after the assault happened (which was admitted without objection). Further, her testimony was corroborated by photographic evidence and medical evidence as well as the officer's testimony describing visible injuries and "drag marks" consistent with her testimony. The prosecutors did not mention the written statement in closing argument, nor did the State overly emphasize the written statement otherwise.

After examining the record as a whole, including the strength of the State's case, we have fair assurance that the erroneous admission of Calderon's written statement regarding the September 26th assault, if it was error, did not influence the jury or had but a slight effect. Therefore, any error in admitting the complained-of evidence was harmless.

For the foregoing reasons, we overrule appellant's first point of error.

## False or Misleading Predicate

In his second point of error, appellant asserts that the State presented false or misleading testimony when establishing the predicate for admitting Calderon's hearsay statements about the September 26th assault—the recorded and written statements complained about in appellant's first point of error—as excited utterances. He argues that the prosecutor created a false impression about Calderon's opportunity to reflect upon her statements at the time she made her statements to the officers by failing to inform the trial court that prior to Officer Slaughter's arrival at the scene Calderon called her mother and 911.

In his brief, appellant asserts that the State revealed this information during trial but only after the court had ruled on the admissibility of the statements. He appears to argue that the failure to inform the court that Officer Slaughter was not the first person Calderon told about the assault was a "withholding" of "material evidence" that violated his right to due process and due course of law. However, appellant never objected to the purported misinformation concerning the timing of the statements to the officer, even when, as appellant acknowledges in his brief, it became apparent later in trial. Even constitutional rights—including the right of due process and due course of law—may be waived if the proper request, objection, or motion is not asserted in the trial court. *Saldano v. State*, 70 S.W.3d 873, 886–87 (Tex. Crim. App. 2002); *see Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004). If a party fails to properly object to constitutional errors at trial, these errors can be forfeited. *Clark*, 365 S.W.3d at 339; *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990). Here, appellant never objected to the purported misinformation or lack of information in the State's predicate at all (at any point in the trial), let

11

alone on the basis of the now asserted constitutional violations. Accordingly, appellant forfeited any complaint about the alleged misinformation violating his constitutional rights to due process and due course of law.

More importantly, appellant has wholly failed to demonstrate that the State presented false or misleading information in establishing the predicate for the excited-utterance exception by failing to inform the trial court that Officer Slaughter was not the first person to whom Calderon made statements. The predicate for establishing that a statement meets the excited-utterance exception requires a showing that the statement is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *See* Tex. R. Evid. 803(2); *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001). There is no requirement that the statement be the first statement made by the declarant about the event. The statement must simply have been made before the declarant's excitement caused by the startling event or condition has abated. *Zuliani*, 97 S.W.3d at 596. Here, as we discussed in the first point of error, Officer Slaughter's testimony established that Calderon was still under the stress of excitement caused by appellant's assault when she made the statements to the officers. Thus, it is irrelevant that Calderon told others about appellant's assault before telling Officer Slaughter about it when he arrived on the scene.

We overruled appellant's second point of error.

**Ineffective Assistance of Counsel**

In his final two points of error, appellant contends that his trial counsel, the third attorney appointed to represent him, rendered ineffective assistance during both the guilt-innocence

12

and punishment phases of trial. Appellant complains of multiple actions or inactions on the part of trial counsel, including the failure to engage in particular pretrial discovery, the "inept questioning" of appellant during his testimony, the failure to request a curative instruction, and the failure to object to the admission of various types of evidence.[9]

To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The appellant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Nava*, 415 S.W.3d at 307. The appellant must then show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Appellate review of counsel's representation is highly deferential; we must indulge a strong presumption that counsel's representation falls within the wide range of reasonable professional assistance—that is, we must presume that trial counsel's decisions were reasonably

---

[9] The majority of appellant's complaints (16 of 19) involve trial counsel's failure to object, or to make the "appropriate" objection, to purportedly inadmissible evidence, including opinion testimony, hearsay evidence, victim impact evidence, character evidence, and extraneous conduct evidence.

professional and motivated by sound trial strategy. *Strickland*, 466 U.S. at 686; *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *see Nava*, 415 S.W.3d at 307–08 ("courts indulge in a strong presumption that counsel's conduct was *not* deficient"). To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record by itself be sufficient to demonstrate an ineffective-assistance claim. *Nava*, 415 S.W.3d at 308; *see Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308 (quoting *Menefield*, 363 S.W.3d at 593); *Goodspeed*, 187 S.W.3d at 392.

In this case, appellant filed a motion for new trial. However, he did not raise a claim of ineffective assistance of counsel in the motion. Thus, the record is silent as to why trial counsel acted or failed to act in the manner that appellant now complains about on appeal. Consequently, the record before this Court is not sufficiently developed to allow us to evaluate those supposed improper actions or failures to act because "[n]either [his] counsel nor the State have been given an opportunity to respond to" the claims of ineffectiveness. *See Menefield*, 363 S.W.3d at 593.

The record is silent as to whether there was a strategic reason for counsel's conduct. Appellant's repeated assertion that there was none is mere speculation. Such speculation does not constitute a demonstration, founded in the record, that no reasonable trial strategy existed. *See*

14

*Lopez*, 343 S.W.3d at 142 ("[C]ounsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation."); *see also Villa v. State*, 417 S.W.3d 455, 463 (Tex. Crim. App. 2013) ("[C]ounsel's alleged deficiency must be affirmatively demonstrated in the trial record."). Counsel was not afforded an opportunity to explain his reasons for the complained-of conduct. Absent record evidence regarding counsel's strategy or reasoning, we will presume he exercised reasonable professional judgment. *See Hill v. State*, 303 S.W.3d 863, 879 (Tex. App.—Fort Worth 2009, pet. ref'd); *Poole v. State*, 974 S.W.2d 892, 902 (Tex. App.—Austin 1998, pet. ref'd); *see also Lopez*, 343 S.W.3d at 143. Appellant has failed to rebut the strong presumption of reasonable assistance because without explanation for trial counsel's decisions, the complained-of conduct does not compel a conclusion that trial counsel's performance was deficient. We cannot say that "no reasonable trial strategy could justify" counsel's decision to engage in the complained-of conduct.[10] *See Lopez*, 343 S.W.3d at 143. Nor can we conclude that counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *See Menefield*, 363 S.W.3d at 592. Accordingly, we find that appellant has failed to demonstrate deficient performance on the part of his trial counsel. *See Frangias v. State*, 392 S.W.3d 642, 653 (Tex. Crim. App. 2013) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct

---

[10] For example, appellant complains about trial counsel's failure to object to the admission of Calderon's hearsay statements about the assaults in the recordings of the 911 calls. An argument can be made, however, that these statements were admissible as excited utterances, an exception to the hearsay rule. More importantly, however, the defense strategy involved emphasizing inconsistencies in Calderon's statements and demonstrating that Calderon was falsely accusing appellant. Thus, it may be that counsel felt that he received some benefit to the admission of the 911 recordings—from inconsistencies shown in her statements or the demeanor that she exhibited in the recordings.

15

was not the product of an informed strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate 'unless the challenged conduct was so outrageous that no competent attorney would have engaged in it.'")

Because appellant failed to meet his burden on the first prong of *Strickland*, we need not consider the requirements of the second prong—prejudice. *Lopez*, 343 S.W.3d at 144; *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong."). Nevertheless, we also find that appellant failed to demonstrate that he suffered prejudice.

Even if an appellant shows that particular errors of counsel were unreasonable, he must further show that they actually had an adverse effect on the defense. *Strickland*, 466 U.S. at 693–95; *Cochran v. State*, 78 S.W.3d 20, 24 (Tex. App.—Tyler 2002, no pet.). It is not sufficient that an appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were of questionable competence. *Lopez*, 343 S.W.3d at 142–43. Further, merely showing that the errors had some conceivable effect on the proceedings will not suffice. *Strickland*, 466 U.S. at 693; *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011). The appellant must prove that counsel's errors, judged by the totality of the representation, not by isolated instances of error or by a portion of the trial, denied him a fair trial. *Strickland*, 466 U.S. at 695.

Appellant argues that this Court should find prejudice because the cumulative effect of the alleged errors demonstrates that his trial counsel failed to subject the State's case to a meaningful adversarial challenge. He maintains that counsel's performance resulted in a breakdown of the adversarial process. We disagree. During voir dire, trial counsel extensively questioned the

16

jury panel regarding their ability to serve on the jury: he discussed important legal concepts such as the State's burden of proof, appellant's Fifth Amendment right not to testify, and the applicable punishment range; he explored possible bias or preconceptions relating to appellant; he discussed issues factually relevant to the case such as dating relationships, troubled relationships, and infidelity; he asked the jurors their opinions regarding government involvement in personal relationships; he discussed possible reasons why an alleged victim might falsely accuse someone of a crime; he talked about the credibility of law-enforcement witnesses and asked the panel members about their prior interactions with law-enforcement personnel; he discussed the effect that a defendant's prior misconduct might have on decision making; and he challenged several panel members for cause. Further, the record shows that counsel presented and developed a defense strategy involving alternate perpetrators and a false accusation by Calderon against appellant instigated by his infidelity in their relationship. In support of this defense, trial counsel emphasized, through cross-examination of the State's witnesses and in jury argument, the fact that Caldron repeatedly gave inconsistent statements about the assaults. Also, during his closing argument, trial counsel again discussed the State's burden of proof and reminded the jury that even though there was evidence of appellant's prior misdeeds, the jury should only find him guilty if they conclude that he was guilty of the offenses actually charged.

An accused is not entitled to entirely errorless representation, and we look to the totality of the representation in gauging the adequacy of counsel's performance. *Frangias*, 392 S.W.3d at 653. The record in this case reveals that counsel's trial strategy was to present evidence of alternative perpetrators of the alleged assaults and a motive for Calderon to falsely

17

accuse appellant. Counsel focused on the inconsistencies of Calderon's descriptions of the assault incidents, including the fact that she named someone else as the perpetrator of one of the assaults, and her reason for falsely accusing appellant: appellant's repeated infidelity. The fact that this strategy ultimately proved unsuccessful does not render counsel's assistance ineffective.

On the record before us, appellant has failed to demonstrate deficient performance on the part of his trial counsel or that he suffered prejudice because of the alleged errors of counsel. Thus, he has not shown himself entitled to reversal based on ineffective assistance of counsel. Accordingly, we overrule appellant's third and fourth points of error.

## CONCLUSION

Having overruled appellant's four points of error, we affirm the trial court's judgment adjudicating guilt and judgments of conviction.

_____
Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed: October 17, 2014

Do Not Publish

18