

# IN THE
# TENTH COURT OF APPEALS

_____

**No. 10-11-00370-CR**
**No. 10-11-00371-CR**

**ROBERT KEVIN COX,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**

_____

**From the 40th District Court**
**Ellis County, Texas**
**Trial Court Nos. 34180CR and 34182CR**

---

## MEMORANDUM  OPINION

---

A jury found Appellant Robert Kevin Cox guilty of the offenses of continuous sexual abuse of a child and indecency with a child and assessed his punishment at life imprisonment without parole and twenty years' confinement, respectively. The trial court ordered the sentences to be served consecutively. These appeals ensued. Because Cox asserts some identical issues in these appeals, we will decide them together.

## Constitutionality of Statute

In the first and second issues of his appeal of his continuous-sexual-abuse conviction, Cox contends that section 21.02 of the Penal Code is unconstitutional as applied in his case under the federal due process clause of the Fourteenth Amendment and under the Texas Constitution's due course of law provision. Cox acknowledges that these issues are being raised for the first time on appeal but states, "A challenge to the constitutionality of a statute as applied in a particular case depends upon evidence presented at trial, and can be raised for the first time on appeal." We disagree. The constitutionality of a statute as applied must be raised in the trial court to preserve the complaint for appeal. *See Curry v. State*, 910 S.W.2d 490, 496 & n.2 (Tex. Crim. App. 1995); *Williams v. State*, 305 S.W.3d 886, 893 (Tex. App.—Texarkana 2010, no pet.). Because Cox raises his issues challenging the constitutionality of section 21.02 for the first time on appeal, we hold that he has forfeited his complaints. We overrule Cox's first and second issues in his appeal of his continuous-sexual-abuse conviction.

## Sufficiency of the Evidence

In the fourth issue of his appeal of his continuous-sexual-abuse conviction, Cox contends that the evidence presented was "factually insufficient" to support his conviction.

The Court of Criminal Appeals has overruled *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), and factual-sufficiency review. *See Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The court has expressed that the only standard of review we should apply when determining a sufficiency issue is as follows:

In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), *cert. denied*, 132 S.Ct. 2712 (2012).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

Section 21.02 of the Penal Code provides that a person commits the offense of continuous sexual abuse of young child or children if:

(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2012). The offense of continuous sexual abuse of young child or children became effective on September 1, 2007; therefore, the statute does not apply to acts of sexual abuse committed before that date. *See* Act of May 18, 2007, 80th Leg., R.S., ch. 593, §§ 1.17, 4.01(a), 2007 Tex. Gen. Laws 1120, 1127, 1148. The indictment alleged that the sexual abuse occurred during a period of thirty days or more from on or about September 1, 2007 through May 8, 2009.

Cox argues specifically that the evidence is factually insufficient to establish beyond a reasonable doubt that the victim in this case was younger than fourteen years of age when the sexual abuse occurred. The relevant evidence presented was as follows: The victim, "Sable,"[1] testified that she was sixteen years old at the time of trial in September 2011. She thought that she and Cox, whom she referred to as her father,[2] had sexual intercourse for the first time in 2006 and that it had continued at least once a month until she told someone about it in May 2009.

Connie, Cox's wife, testified that before agreeing to adopt Sable from Ethiopia, Connie received paperwork from an Ethiopian doctor that listed Sable as seven years old. Connie and Cox heard from other families that the children were made to look

---

[1] To protect the victim's anonymity, we will use the pseudonym assigned to her in the indictment.

[2] Cox and his wife had decided to adopt Sable, but the adoption process was not completed at the time of trial.

younger than they really were because it made them more easily adoptable. Connie admitted that she believed that was true and that she does not know exactly how old Sable is. Connie stated that when she picked up Sable from the orphanage in Ethiopia, she believed that, due to her height, Sable was seven or eight years old. Sable came to the United States in July 2005. The birthday listed on her paperwork was October 18, which was the date she had entered into the orphanage, and the year listed was 1995. Photographs of Sable, including three photographs taken in the first few days she was in the United States, were also admitted into evidence.

Teresa Evans, a forensic interviewer at the Ellis County Children's Advocacy Center, testified that when she interviewed Sable on May 15, 2009, Sable said that she was fourteen years old, and Evans thought that Sable appeared to be that age. Likewise, Rebecca Sullivan, a registered nurse at Cook's Children's Medical Center in Fort Worth, testified that she performed a medical exam of Sable on May 15, 2009, and Sable told her that she was fourteen years old at that time. The date of birth given for Sable for the forensic exam was October 11, 1995. Sable told Sullivan that the sexual abuse started when she was twelve years old, and the last time would have been more than two weeks prior to the medical exam.

Dr. Robert Williams, a private practicing dentist and forensic odontologist, testified that he was called upon to determine Sable's age using her dental x-rays. The x-rays were taken on November 3, 2010. Dr. Williams concluded that the "mean" age of Sable's teeth was 15.35 years old, that there was a ninety-two percent chance that her age fell within the range of 12.11 and 18.59 years old, and that there was a sixty-six

percent chance that her age fell within the range of 13.85 and 16.85 years old. Dr. Williams stated that he was "comfortable" that the development of her teeth put her in the 13.85 to 16.85 age range.

Cox argues that the evidence is insufficient because the testimony presented at trial never definitely established Sable's age and because Dr. Williams's testimony indicates that there is a chance that Sable was fourteen years old or older when the offense occurred. But the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981)). A jury may believe all, some, or none of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). As the reviewing court, we "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002); *see also Sharp*, 707 S.W.2d at 614.

Viewing all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Sable was sexually abused for a period of thirty days or more from on or about September 1, 2007 through May 8, 2009 and that Sable was younger than fourteen years of age at that time. We therefore conclude that the evidence is sufficient to support Cox's conviction for continuous sexual abuse. We overrule the fourth issue in Cox's appeal of his continuous-sexual-abuse conviction.

**Reliability of Dr. Williams's Testimony**

In the third issue in his appeal of his continuous-sexual-abuse conviction and in the first issue in his appeal of his indecency-with-a-child conviction, Cox contends that Dr. Williams's testimony was inadmissible because it was unreliable. More specifically, Cox first argues that "[t]he science Dr. Williams used to derive an estimated age range for the victim has an error potential of 6.60 percent" and that "[a]n error rate of 6.60 percent is too high to be considered reliable in court and constitutes an abuse of discretion in the admission of such evidence." Second, Cox asserts that Dr. Williams testified that he could only estimate Sable's age within a six-year range and that "[s]uch a large range of age, coupled with the high error rate, could not possibly be specific enough to help the jury reach an accurate result." Finally, Cox argues that Dr. Williams's "repeated use" of Sable's alleged "mean" age of 15.35 was "nothing more than an attempt to mislead the jury."

A complaint on appeal that differs from the objection before the trial court has not been preserved for our review. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). Before Dr. Williams testified, the trial court held a hearing outside the presence of the jury. At the hearing, Cox made the following objection as to Dr. Williams:

> Well, let me make my objection for the record, Judge. I will say I believe the doctor to be imminently [sic] qualified, but basically what was done, some stuff was inputted into the computer program and it got an output. And we don't know exactly what the computer program was, how exactly it came up. I mean, it's not -- the Kelly and Daubert line of cases talk about that -- that a technique has to be valid. I assume this technique is valid based on what the doctor testified to, but it has to be validly applied in a particular case.

And so we don't know -- we don't know how that computer comes up with the answer. And it's kind of like an intoxilyzer in a DWI case. The operator don't [sic] know exactly how it works. And we really don't either because we can't get the source code. So that would be my objection.

The State responded:

I obviously disagree, Judge. I actually liken this more to a little bit more like the DNA result. You know, the forensic scientist does the preliminary testing to determine if there's DNA present in something, but in terms of giving the statistical number relating to -- you know, they can exclude this person one in 23 billion or whatever, it's similar. He's talking the statistics part of it. That's done by computer as well. So I don't think there's any differentiation there.

He actually does look at x-rays and compares it to other charts. And then the statistics are what's spit out by the computer basically. But the actual science behind it, he actually does himself.

The trial court overruled the objection. Subsequently, while Dr. Williams was testifying before the jury, Cox "re-urge[d] [his] previously made objection," which the trial court again overruled. Cox then asked for a running objection so that he would not have to interrupt Dr. Williams. The trial court granted the running objection. Thereafter, when the State moved to introduce into evidence a report that Dr. Williams had prepared, Cox again "re-urge[d] [his] previous objection" and stated that he had no other objections. The trial court again overruled the objection.

Cox asserts in his brief that his complaints are preserved for review because he was granted a running objection throughout Dr. Williams's testimony based on the unreliability of the scientific evidence. We conclude, however, that Cox failed to preserve his complaints for our review because his complaints on appeal do not comport with his objection at trial. *See id.* We overrule Cox's third issue in his appeal of

his continuous-sexual-abuse conviction and Cox's first issue in his appeal of his indecency-with-a-child conviction.

## Admissibility of Boaz's Testimony

In the fifth issue in his appeal of his continuous-sexual-abuse conviction and his second issue in his appeal of his indecency-with-a-child conviction, Cox contends that expert witness Ben Boaz's testimony was inadmissible because it was irrelevant under Rules of Evidence 401, 402, and 702.

We review a trial court's decision to admit or exclude expert testimony using an abuse of discretion standard. *See Ellison v. State*, 201 S.W.3d 714, 723 (Tex. Crim. App. 2006). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

The Texas Rules of Evidence set out three separate conditions regarding the admissibility of expert testimony. First, Rule 104(a) requires a trial judge to determine "[p]reliminary questions concerning the qualification of a person to be a witness." TEX. R. EVID. 104(a). Second, Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. And third, Rule 402 renders relevant evidence admissible. TEX. R. EVID. 402. Rule 401 defines "relevant evidence" as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401.

These rules require a trial judge to make three separate inquiries, all of which must be met before admitting expert testimony: "(1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case." *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006). These inquiries are commonly referred to as qualification, reliability, and relevance, respectively. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). Cox does not challenge whether Boaz qualified as an expert or whether the subject matter of his testimony was an appropriate one for expert testimony; rather, as indicated above, Cox argues specifically that "the subject of [Boaz's] testimony was not relevant to the case presented."

For the proffered expert testimony to be relevant to assist the jury, the expert must make an effort to tie pertinent facts of the case to the principles that are the subject of his testimony. *Tillman v. State*, 354 S.W.3d 425, 438 (Tex. Crim. App. 2011) (citing *Jordan v. State*, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996)). Rule of Evidence 703 permits an expert to base his opinion testimony on data and facts made known to him during trial. TEX. R. EVID. 703; *see Tillman*, 354 S.W.3d at 439. An expert witness's testimony may also consist of answers to hypothetical questions. *McBride v. State*, 862 S.W.2d 600, 610 (Tex. Crim. App. 1993). Although the hypothetical questions must be based on facts in evidence, there is no requirement that these facts be proved beyond a reasonable doubt. *Id.* Indeed, in propounding the question to the witness, counsel may assume the facts in accordance with his theory of the case. *Id.* at n.20. The fact-finder

judges the credibility of the evidence and, consequently, the opinion of the expert witness based on that evidence. *See id.* at 610.

Boaz testified that he is a licensed professional counselor and the director of a sex-offender treatment program; he treats both adult and juvenile sex offenders. Boaz stated that he had no direct or indirect knowledge of anything that happened in this case but that, as a licensed sex-offender therapist, he has found there to be behavioral characteristics that are common or prevalent among sex offenders, one of those being "grooming." Boaz described grooming as a process in which an adult prepares a child to be sexually abused by gaining the child's trust so that the child believes that the sexual behavior he or she is engaging in with the adult is appropriate. The child is then unlikely to make an outcry that something inappropriate is happening.

Boaz testified that the grooming process usually begins with what appears to be normal, appropriate parenting. The adult spends a considerable amount of time with the child and shows the child a lot of affection. At that time, the adult most likely has a genuine desire to be an appropriate adult in the child's life, but at some point, the adult's motive changes to wanting the child to take care of the adult's emotional and physical needs. The adult then begins singling out the child for extra attention and affection and allows the child to get away with things that the other children do not get away with. This creates in the child a sense of obligation. When asked by the prosecutor if grooming would include being the "good parent" in a two-parent home (*i.e.*, allowing the child to do things that the other parent does not allow), Boaz replied

that it did. Boaz said that this may go on for years before any inappropriate sexual behavior actually takes place.

Boaz testified that grooming for the sexual offense then begins to include a lot of physical affection or horseplay, like tickling and wrestling. The horseplay then gradually becomes more and more sexualized. The adult is attempting to make the abuse seem like a game to the child. Boaz agreed with the prosecutor that sleeping together in the same bed with the child would be a way for an adult to make the child feel very comfortable being close and physically affectionate with the adult. When asked by the prosecutor if he had heard of instances where the adult plays doctor or pretends to be a doctor with the child when the sexual contact begins, Boaz replied that that was not uncommon at all. Boaz stated that it is very common for sex offenders to re-create games that normal children would play with other children. When asked by the prosecutor if he has seen instances where the offender actually tells the child that he is checking them or performing an exam, Boaz again replied that yes, it is very common. Boaz commented that it is also common for the offender to take the role of the sex educator. When asked by the prosecutor if sexual touching can then develop into full-blown intercourse at times, Boaz replied that yes, if nothing happens to stop the offender's behavior, it always progresses to something worse. When also asked by the prosecutor if the offender may try to instill a sense of trust with the child by telling her that he loves her and that they are going to get married one day and go off together, Boaz replied that yes, offenders try to create illusions in the child that the two of them

have a very special relationship. Boaz stated that the offender might even say that he loved the child more than he loves "mommy."

Boaz's expert testimony tied the facts of the case to the principles of grooming through the hypothetical questions framed by the prosecutor. For instance, Connie had testified that Sable began to hate her and that if Sable asked her something and she said no, then Sable would ask Cox and get it, so she was always the "bad guy." The prosecutor thus asked Boaz if grooming included being the "good parent" in a two-parent home, and Boaz replied that it did. Likewise, both Connie and Sable testified that there were times when Sable and Cox slept in the same bed. The prosecutor thus asked Boaz if grooming included sleeping in the same bed with the child, and Boaz replied that it did. Furthermore, Sable testified that the first time something inappropriate happened, Cox had told her that he needed to show her how to perform breast examinations for cancer. Connie testified that when Sable described this incident to her, Sable said that it was all done in a very doctor-like manner. Sable also stated that on two occasions, Cox had convinced her to examine her vagina because he had told her that she could have been "internally damaged" from prior sexual abuse by family members in Ethiopia. Connie stated that when Sable described this incident to her, Sable had said Cox talked in technical terms like a doctor. The prosecutor thus asked Boaz if grooming included instances where the adult pretended to be a doctor, and Boaz confirmed that it did. Therefore, Boaz's expert testimony was relevant to assist the jury. *See Tillman*, 354 S.W.3d at 438; *McBride*, 862 S.W.2d at 610.

In these issues, Cox also conclusorily suggests that Boaz's testimony was inadmissible because "the prejudicial effect of the testimony was far greater than any probative value." *See* TEX. R. EVID. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or needless presentation of cumulative evidence."). We disagree.

Based on the foregoing, we hold that the trial court did not abuse its discretion by admitting Boaz's expert testimony over Cox's objections. We overrule Cox's fifth issue in his appeal of his continuous-sexual-abuse conviction and Cox's second issue in his appeal of his indecency-with-a-child conviction.

### Admissibility of Connie's Testimony

In the sixth issue in his appeal of his continuous-sexual-abuse conviction and his third issue in his appeal of his indecency-with-a-child conviction, Cox contends that certain statements made by Connie in her testimony were inadmissible hearsay.

Cox first complains about the following exchange between the prosecutor and Connie:

> Q. The question before we took the break was, in that conversation that you had with [Sable] the day after Eleanor spoke to her, did [Sable] relay to you multiple times that she and the defendant had sexual intercourse?
>
> A. Yes, she did.
>
> Q. Okay. And was it your understanding that it had occurred in a period that was over 30 days?
>
> A. Yes.

But even if we conclude that Connie's testimony in the foregoing exchange was inadmissible hearsay, we hold that Cox was not harmed by admission of the testimony.

The admission of otherwise inadmissible hearsay is non-constitutional error, which we disregard if the error did not affect the appellant's substantial rights.[3] TEX. R. APP. P. 44.2(b); *Moon v. State*, 44 S.W.3d 589, 594-95 (Tex. App.—Fort Worth 2001, pet. ref'd). A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). The improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *Lacaze v. State*, 346 S.W.3d 113, 122 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999).

Before Cox made any hearsay objection to Connie's testimony, Connie testified without objection that Sable told her that Cox was having sex with her and that it had been going on for a long time. Furthermore, Sable testified that she and Cox had sexual intercourse and that she thought it occurred for the first time in 2006 and that it continued at least once a month until she told someone about it in May 2009. Therefore, we conclude that even if the trial court erred in admitting Connie's testimony as stated above, the error did not affect Cox's substantial rights. *See* TEX. R. APP. P. 44.2(b).

---

[3] Cox argues in his brief that the State's introduction of hearsay evidence violated his Sixth Amendment right of confrontation as articulated in *Crawford*. But Cox never objected to Connie's testimony based on confrontation or the Sixth Amendment. Cox only objected that her testimony was hearsay. Such an objection does not preserve an issue of the Sixth Amendment right of confrontation. *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005).

Secondly, Cox complains about the following exchange between the prosecutor and Connie:

> Q.  What did Kevin say about the incident?
>
> A.  He said it didn't happen.
>
> Q.  What did he say didn't happen?
>
> A.  Well, I can't say because you won't let me say what [Sable] said.
>
> [Defense Counsel]:  Judge, I'm going --
>
> A.  Kevin said --
>
> THE COURT:  Wait a second.
>
> [Defense Counsel]:  That's just a backdoor way to get into the details of the incident.
>
> THE COURT:  I understand.  I don't have a problem if this witness says what the defendant said.
>
> [Prosecutor]:  Right.
>
> THE COURT:  I just want to make sure that -- the relevance to the date range.
>
> [Prosecutor]:  This is -- this is the continuing course of the relationship between the defendant and the victim, which is always relevant.
>
> THE COURT:  I understand.  Overruled.  You may testify to what the defendant said.
>
> [Defense Counsel]:  I need to further object to it's outside the date range.
>
> THE COURT:  I understand.

[Defense Counsel]: And could I have a continuing running objection to what the defendant said?

THE COURT: You can. Running objection is granted. You're [sic] concern[] about the date range was addressed by counsel's relevancy statement to the Trial Court. You may proceed.

Q. . . . Just the words that came out of Kevin's mouth.

A. Kevin said it was not his penis. It was a pillow.

But even assuming without deciding that Cox preserved his hearsay complaint about Connie's testimony in the foregoing exchange, we conclude that the trial court did not abuse its discretion in admitting the testimony. The statement of a criminal defendant is not hearsay. TEX. R. EVID. 801(e)(2)(A); *see Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999) ("Rule 801(e)(2)(A) plainly and unequivocally states that a criminal defendant's own statements, when being offered against him, are not hearsay."). We thus overrule Cox's sixth issue in his appeal of his continuous-sexual-abuse conviction and Cox's third issue in his appeal of his indecency-with-a-child conviction.

## Conclusion

Having overruled all of Cox's issues in each of these appeals, we affirm the trial court's judgments.

REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Judge Hamilton[4]
     (Chief Justice Gray concurs with a note)*
Affirmed
Opinion delivered and filed July 18, 2013
Do not publish
[CRPM]

     *(Chief Justice Gray concurs in the judgments to the extent they affirm the judgments of the trial court.  A separate opinion will not issue.)

---

[4] Lee Hamilton, Judge of the 104th District Court of Taylor County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to Section 74.003(h) of the Government Code.  *See* TEX. GOV'T CODE ANN. § 74.003(h) (West 2013).